CHARLES EELS, Respondent, *v.* THE AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Appellant.

The state can neither itself appropriate to its own special, continuous and exclusive use, nor can it authorize a corporation to so appropriate, any portion of a rural public highway, by setting up poles therein for the purpose of supporting telegraph or telephone wires.

The question as to the legality of such a use is not affected by the fact that the legislature by statutory enactments has manifested its belief in the existence of such a right, or by the fact that adjoining owners have generally acquiesced in such a use.

Where, therefore, a telegraph and telephone company, organized under the laws of this state (Chap. 265, Laws of 1848, as amended by chap. 471, Laws of 1853), had, without the consent of an adjoining owner, who owned the fee of a highway, and without having acquired the right by condemnation proceedings, erected its poles in the highway and strung wires thereon for the purposes of its business, *held*, that such a use of the highway was unlawful; and that an action of ejectment was maintainable against it.

Reported below, 65 Hun, 516.

(Argued June 5, 1894; decided October 9, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 4, 1892, which affirmed a judgment in favor of plaintiff entered upon a verdict directed by the court.

This was an action of ejectment.

The facts, so far as material, are stated in the opinion.

*Sherman S. Rogers* for appellant. The maintenance and operation of the telephone line over the highway is a legitimate and proper use thereof so far as the public is concerned. The authority so to use it was conferred by legislative act. (Laws of 1848, chap. 265; 3 R. S. 2061; Laws of 1853, chap. 47; 3 R. S. 2063; *Atty.-Gen.* v. *T. Co.*, L. R. [6 Q. B. Div.] 244; *C. T. Co.* v. *U. E. R. Co.*, 42 Fed. Rep. 275; Thompson on Electricity, 101; *H. R. R. R. Co.* v. *W. T. & R. Co.*, 135 N. Y. 393, 405.) The maintenance of the telephone line did not impose an additional servitude upon the fee. (*Pierce* v. *Drew*, 136 Mass. 75, 79; *W. U. T. Co.* v. *Williams*, 86

Va. 696; *J. B. Assn.* v. *B. T. Co.*, 88 Mo. 258; *Witcher* v. *H. W. W. Co.*, 66 Hun, 619; *P. W. W. Co.* v. *Birch*, 130 N. Y. 249; *Bolling* v. *Mayor, etc.*, 3 Rand. 563; *Dickerson* v. *Colgrove*, 100 N. J. 578.).

*Melville Egleston* for appellant. The erection of the defendant's telephone line upon the highway was duly authorized by law. The defendant is a telegraph company. (*Duke* v. *C. N. J. T. Co.*, 53 N. J. L. 341; *Telephone Cases*, 126 U. S. 6; *Comm.* v. *P. T. Co.*, 42 Leg. Int. 180; *C. & P. T. Co.* v. *B. & O. T. Co.*, 66 Md. 399; *W. T. Co.* v. *Oshkosh*, 62 Wis. 32; *C. T. & T. Co.* v. *U. E. R. Co.*, 42 Fed. Rep. 273.) The legislature may authorize the erection of a telegraph or telephone line on a highway without compensation to the owner of the fee. (*Pierce* v. *Drew*, 136 Mass. 75; *J. B. Assn.* v. *B. T. Co.*, 88 Mo. 258; *P. T. Co.* v. *W. U. T. Co.*, 94 U. S. 1; *Elliott* v. *F. H. & W. R. R. Co.*, 32 Conn. 581; *People* v. *Kerr*, 27 N. Y. 188; *Wager* v. *T. U. R. R. Co.*, 25 id. 526; *Story* v. *N. Y. E. R. R. Co.*, 90 id. 148; *Briggs* v. *H. R. R. Co.*, 79 Maine, 363; *Olinda* v. *Lathrop*, 21 Pick. 292; *Tucker* v. *Tower*, 26 id. 109; *Cushing* v. *Boston*, 122 Mass. 173; *Atty.-Gen.* v. *M. R. R. Co.*, 125 id. 515; *Chapman* v. *A. & S. R. R. Co.*, 10 Barb. 360.)

*John M. Hull* for respondent. Plaintiff's title extends to the center of the highway. (*Greer* v. *N. Y. C. & H. R. R. R. Co.*, 37 Hun, 346; *Perrin* v. *N. Y. C. & H. R. R. R. R. Co.*, 36 N. Y. 120; *Bissell* v. *N. Y. C. & H. R. R. R. Co.*, 23 id. 61; *Story* v. *N. Y. E. R. R. Co.*, 90 id. 122; Tyler's Law of Boundaries, chap. 9; Gerard's Title to Real Estate [3d ed.], 518; *Wager* v. *T. U. R. R. Co.*, 25 N. Y. 526; *Sharp* v. *Spear*, 4 Hill, 76.) There was no consent or acquiescence on the part of the plaintiff such as to estop him from maintaining ejectment. (*Lux* v. *Haggin*, 69 Cal. 266; *Biddle Boggs* v. *M. Min. Co.*, 14 id. 279; *N. Y. R. Co.* v. *Rothery*, 107 id. 310; *Leonard* v. *Spencer*, 108 id. 338–346; *Viele* v. *Judson*, 82 id. 32–40; *T. H. R. Co.* v. *Rudel*, 89

Ind. 128; *Boyce* v. *Watrous,* 73 N. Y. 597; *Vandervoort* v. *Gould,* 36 id. 639; *Murdock* v. *P. P. & C. I. R. R. Co.,* 73 id. 579.) Placing telegraph and telephone poles and wires in highways is an additional burden upon the soil, and constitutes a taking which requires compensation to be made (*Peck* v. *Smith,* 1 Conn. 130; *Goodtitle* v. *Acker,* 1 Burr. 133; Tyler's Law of Boundaries, chap. 9; *Knox* v. *Mayor, etc.,* 55 Barb. 404; *Van Brunt* v. *Town of Flatbush,* 128 N. Y. 50; Cook's Highway Laws of N. Y.; Cooley on Const. Lim. 559; *Kane* v. *N. Y. E. R. R. Co.,* 125 N. Y. 164; *Board of Trade Tel. Co.* v. *Barnett,* 107 Ill. 507; *Smith* v. *C., etc., Tel. Co.,* 2 Ohio, 259.; *A., etc., T. Co.* v. *C., etc., R. R. Co.,* 6 Biss. 158; *A. T., etc., Co.* v. *Pearce,* 71 Md. 535; *W. U. T. Co.* v. *Williams,* 86 Va. 696; *Willis* v. *E., etc., Co.,* 37 Minn. 347; *M., etc., Co.* v. *C. L. Co.,* 67 How. Pr. 365; *Blashfield* v. *E. S. T. & T. Co.,* 18 N. Y. Supp. 250; *C. & P. T. Co.* v. *Mackinzie,* 21 Atl. Rep. 690; *State* v. *C. N. J. T. Co.,* Id. 460; *Broome* v. *N. Y. & N. J. T. Co.,* 42 N. J. Eq. 141; Thompson on Law of Electricity, § 18; *King* v. *Ward,* 4 Ad. & El. 384.)

Peckham, J. The sole question involved upon this appeal is the extent of the public easement in a rural highway, the fee of which is in the adjoining owner. The plaintiff herein is the owner in fee subject to the public easement of the premises in question, which constitute part of a public highway in the town of Alden and county of Erie, in this state. The defendant occupies a portion of the highway with its poles upon which it has strung its wires for the purpose of conducting its business as a telephone and telegraph company. It is incorporated and organized under the laws of this state for the incorporation and regulation of telegraph companies. The plaintiff claims that the defendant has no right to occupy any portion of the public highway with its poles, and he has, therefore, commenced this action of ejectment to recover the premises described in the complaint, subject to the public easement therein for a highway. The court upon the trial

directed a verdict for the plaintiff, and the judgment entered upon it having been affirmed by the General Term, the defendant has appealed here.

The defendant admits that if the use it makes of the highway is outside the scope of the public easement, then the consent of the owner of the soil is necessary, or compensation must be made him for such use.

By the fifth section of chapter 265 of the Laws of 1848, providing for the incorporation and regulation of telegraph companies, as amended by the second section of chap. 471 of the Laws of 1853, it is provided that telegraph corporations may construct their lines upon any of the public roads, streets or highways of the state, provided the same shall not be so constructed as to incommode the public use of the roads or highways; and they are also authorized to construct the same upon any other land, subject to the right of the owner to full compensation therefor. It has been held that a telephone company is, within the provision of the statute, a telegraph company. (*Telephone Cases*, 126 U. S. 6; *Telephone Co.* v. *Turnpike Co.*, 135 N. Y. 393, 404.) The defendant does not, however, contend that the statute gives any right to these companies to make use of the highway for the purpose of constructing their lines thereon without compensation to the owner of the fee of the highway, unless such use is in its nature a part of the public easement for which highways are constructed.

The statute, therefore, does not aid in the decision of this question, but it is cited by the defendant as evidence of legislative belief that such use of the highway was legitimate and within the purpose for which highways were laid out. Defendant also urges that some weight is to be attached to the alleged fact that this use of the highway has been very generally acquiesced in by the adjoining owners of the land and that such acquiescence is quite strong evidence that the use was proper.

The question is one plainly of law, and whatever may have hitherto been the legislative belief or the opinion of the

.adjoining owners as to the propriety of this use of a rural public highway, it must be decided by us in accordance with our own view as to what the law is upon this subject. The length of time which any particular adjoining owner has .acquiesced in this use of a highway, the circumstances attending upon and surrounding that acquiescence, the probable considerations operating either to create or to continue it, are all alike matters upon which the court is completely ignorant, :and any opinion as to the legality of the use founded upon an .acquiescence by the adjoining owners under circumstances unknown to the court, must in its very nature be almost if not entirely worthless. The argument founded upon the legislative belief of the legality of such use has also very little weight. There was no warranty implied from the passage of the statute that the consent of the state alone was necessary. All the facts were known to all the parties, and whether, in addition to the consent of the state, that of the adjoining owners was necessary, was a matter which the state might well leave to the parties interested to try out when the point arose. The question has never been covered up or otherwise concealed, and at the most it can only be urged that the legislature was of the opinion, upon this purely legal question, that the consent of the adjoining owner was not necessary. It is not contended that if it had held the other opinion it would have legislated any more favorably for the companies. If such consent were necessary it was on account of the constitutional provision that private property should not be taken for public use without due compensation, and this provision the legislature could neither alter nor efface. The companies cannot, therefore, be legally said to have suffered anything by reason of this legislative opinion, and they are not on that account in any position to appeal to a specially favorable construction of the law in their behalf. The legislature could have provided that in all future dedications of land for a public highway, and in taking land under the right of eminent domain for that use thereafter, the right to use it for the purpose for which defendant now uses

the highway in question, should be implied in such dedication and paid for when taken. That would have no effect upon land already dedicated or taken for a highway, and could not aid the defendant. An alleged practical construction of the law for many years by the general public in favor of the defendant's contention, cannot be the foundation upon which, if proved, to base a legal claim on the part of the defendant, and unless it can show that its use of the highway at the *locus in quo* is within the limitation of the public easement, it can create no right of continuance in such use arising from a general public acquiescence in its claim, provided the plaintiff or those under or through whom he claims have not given expressly or by implication the requisite consent. What other parties may have thought or what action they may have taken upon such a question, and with regard to their lands, cannot in any manner conclude or affect the plaintiff when he chooses to deny the existence of defendant's right to use land of which plaintiff owns the fee, subject to the public easement therein for a public highway. We agree with the learned counsel for the defendant that the question is not essentially different from that which would arise if the state itself, through its public officers, by virtue of an act of the legislature, should attempt to operate a telegraph line by means of poles, etc., placed in a public highway and without the consent of, or compensation made to, the adjoining owners who owned the fee of the highway subject to the public easement. If the state could itself do such an act it could create and authorize a corporation to do it.

We think neither the state nor its corporation can appropriate any portion of the public highway permanently to its own special, continuous and exclusive use by setting up poles therein, although the purpose to which they are to be applied is to string wires thereon and thus to transmit messages for all the public at a reasonable compensation. It may be at once admitted that the purpose is a public one, although for the private gain of a corporation, but the Constitution provides that private property shall not be taken for public use without

compensation to the owner. Where land is dedicated or taken for a public highway, the question is what are the uses implied in such dedication or taking? Primarily there can be no doubt that the use is for passage over the highway. The title to the fee of the highway generally remains in the adjoining owner, and he retains the ownership of the land, subject only to the public easement. If this easement do not include the right of a telegraph company to permanently appropriate any portion of the highway, however small it may be, to its own special, continuous and exclusive use, then the defendant herein has no defense to the plaintiff's claim. Although the purpose of a public highway is for the passage of the public, it may be conceded that the land forming such highway was not taken for the purpose of enabling the public to pass over it only in the then known vehicles, or for using it in the then known methods for the conveyance of property or the transmission of intelligence. Still the primary law of the highway is motion, and whatever vehicles are used, or whatever method of transmission of intelligence is adopted, the vehicle must move and the intelligence be transmitted by some moving body which must pass along the highway, either on or over, or perhaps under it, but it cannot permanently appropriate any part of it.

In the case at bar the fee in the highway at the point in controversy is in the plaintiff, but I do not regard that fact as controlling upon the question of the proper use of the highway. Of course the plaintiff could not recover in this form of action unless he owned the fee in the highway at this particular point, but I do not think the proper use of the highway depends upon the question as to who owns the fee thereof. I think that the rights of the public in and to the highway remain the same wherever the fee thereof may be placed. (2 Dill. on Munic. Corp. 698a, etc.) As the fee in this case is in the plaintiff, the discussion of the question must be had with reference to that fact. Where one owns to the center of a street in a city, it has been held that the laying of the rails for a horse railroad imposed an additional burden upon the

land forming the street, for which the owner was entitled to compensation. (*Craig* v. *Railroad Co.*, 39 N. Y. 404.) Although relief was denied a plaintiff who did not own the fee, and who desired to enjoin the use of the street by a horse railroad company, it was denied upon the ground that there was no taking of the property of the plaintiff by the company, and that being authorized by the legislature the plaintiff could not complain. (*Kellinger* v. *Railroad Co.*, 50 N. Y. 206.) The plaintiff sought in that action to recover damages for inconvenience of access to his adjoining lands. In the *Craig* case (*supra*) the case was decided upon the idea that there was an exclusive occupation of the street which amounted to an additional burden upon the land. The cases upon the subject of railroads in streets are cited and commented upon in *Fobes* v. *Railroad Co.* (121 N. Y. 505); *Kane* v. *Railroad Co.* (125 id. 164), and *Reining* v. *Railroad Co.* (128 id. 157), and they show that the primary or fundamental idea of a highway is that it is a place for uninterrupted passage by men, animals or vehicles, and a place by which to afford light, air and access to the property of abutting owners, who, in this respect, enjoy a greater interest in the street than the general public, even though their title to the land stops with the exterior line of the street. It is not a place which can be permanently and exclusively appropriated to the use of any person or corporation, no matter what the business or object of the latter might be. It was because the highway was permanently, and, to some extent, exclusively appropriated by the elevated railroads that it was held their erection, without the consent of the abutting owners, was illegal. (*Story* v. *Railroad Co.*, 90 N. Y. 122.)

We cannot agree that this permanent appropriation and exclusive possession of a small portion of the highway can properly be regarded as any newly discovered method of exercising the old public easement, for the very reason that this so-called new method is a permanent, continuous and exclusive use and possession of some part of the public highway itself, and, therefore, cannot be simply a new method of exercising such

old public easement.   It is a totally distinct and different kind of use from any heretofore known.   It is not a mere difference in the kind of vehicle, or in their number or capacity, or in the manner, method or means of locomotion.   All these might be varied, increased as to number, capacity or form, altered as to means or rapidity of locomotion, or transformed in their nature and character, and still the use of the highway might be substantially the same, a highway for passage and motion of some sort.   Here, however, in the use of the highway by the defendant is the fact of permanent and exclusive appropriation and possession, a fact which is, as it seems to us, wholly at war with that of the legitimate public easement in a highway.   The following are some of the many authorities which hold that the easement is one of passage only : *Good-title* v. *Alker* (1 Burr. 133) ; *Prest. Soc. of Waterloo* v. *Railroad Co.* (3 Hill, 557), and cases cited ; *Van Brunt* v. *Town of Flatbush* (128 N. Y. 50, 55).   Defendant argues that the case in 3 Hill (*supra*), while announcing the principle above stated, yet did not, in fact, involve the question and is not authority to be regarded, while the cases cited in the opinion in that case the defendant claims do not really support the principle.

We think the case in Hill correctly states the law upon the subject, and that case has been very frequently cited with approval by this court to sustain the above proposition, and among the cases where such citations are to be found is that of *Bloomfield, etc., Co.* v. *Calkins* (62 N. Y. 386).

That case is, as we think, substantially decisive of this one. It was there decided that plaintiff had no right to lay its gas pipes in a country highway without the consent of, or compensation to, the owner of the fee.   It was also reiterated that the right of the public was a mere right of passage and the fee of the land remained in the owner for all other purposes. As to whether there is a different or more comprehensive right in regard to streets in cities, the case does not decide, although it is intimated the right may be greater there than in a purely country highway.

While concurring in the view that the easement in a public street in a city or village may well be greater as the actual necessities of the case are greater for sewers and gas and water pipes, yet in this case, as we have to deal only with the easement in a purely country highway, it is not important to discuss how the easement became greater in the one case than in the other, or as to the time when the right to the enlarged use of the highway or street attaches, or the method or means by which the right to such enlarged use was attained. Density of population creates public necessities for water, light, drainage and other conveniences which do not exist in purely rural districts and along a purely rural highway. Yet the same land might alter from a country highway to a city street, and it might be determined that there was an implied dedication of the country highway at the time the land was taken to the uses which the future village or city street might require. We do not decide as to that matter, nor do we intimate that the defendant would or would not have the right to place its poles in the city street without compensation to the owner, if he owned to the center of the street.

The argument is pressed upon us that the question to be decided in this case is new and that it ought to be decided with reference to the wants and customs of the advancing civilization which it is alleged is doing so much to render life more comfortable, attractive and beautiful. Courts are frequently addressed with such arguments, which are quite forcible, and they have in this case been very eloquently, plausibly and aptly advanced. The answer to be made is that, although this particular phase of the question, strictly speaking, may itself be new, yet the principle which governs our decision is as old almost as the common law itself; and in deciding this appeal favorably to the defendant herein, we should be overturning and making nothing of cases which have been regarded as the law for generations past. A majority of the states, whose courts have considered the question, have decided it in accordance with our own views. The cases are collected in the brief of the learned counsel for the respondent herein. Let

the defendant pay the owners for the value of the use it makes of the land outside and beyond the public easement in the highway, and the necessity of the broader decision is done away with. It has the power to take the land upon making compensation, and hence the refusal of an owner will not stop the proposed undertaking. The amount of the compensation is not now the question, but that, in many cases, it can be anything more than merely nominal would seem to be a proposition which would not require great elaboration of argument to make plain. The use would frequently be but a technical encroachment upon the rights of the adjoining owner, and there would be but little fear that anything more than nominal damages would be allowed. This cannot, however, alter the legal rights of the parties, and, in regard to them, we think the courts below have decided correctly, and the judgment appealed from should be affirmed, with costs.

All concur.

Judgment affirmed.