**HILL FARM, INC., Petitioner,**

v.

**HILL COUNTY, Texas, Respondent.**

No. B–872.

Supreme Court of Texas.

Jan. 15, 1969.

Rehearing Denied Feb. 12, 1969.

Beard & Kultgen, Pat Beard and Thomas L. Cook, Waco, for petitioner.

Betty Dohoney, Hillsboro, for respondent.

WALKER, Justice.

This suit was brought by Hill County, respondent, to obtain a mandatory injunction requiring Hill Farm, Inc., petitioner, to remove a pipeline placed by the latter in a public road. Summary judgment was rendered for the County, and the Court of Civil Appeals affirmed. 425 S.W.2d 414.

Petitioner extended a 2-inch galvanized pipeline from a well on land owned by G. E. Ryno to a tract owned by Guy Moore. It provides water for petitioner's operations, for three families who live on petitioner's property, and for three neighbors. The line is laid in the public road for a distance of some 300 yards. It is buried to a depth of approximately four feet and lies generally about nine feet from the center of the road. The road varies in width from 24 feet to 27 feet. Petitioner laid the pipeline there with the consent of the county commissioner for the precinct. Although petitioner is willing to take up the pipe temporarily whenever work is to be done on the road, it insists that the County has no right to complain of its replacing and maintaining the line in a manner that will not interfere with the maintenance and the use of the road for travel.

The Court of Civil Appeals concluded: (1) that the pipeline is a purpresture, and (2) that the County, in its capacity as trustee of the public easement in the road, is entitled to maintain this action to have the pipeline removed. A purpresture has been defined as an encroachment upon public rights and easements, the appropriation to private use of that which belongs to the public. See Words and Phrases, "Purpresture." The encroachment or appropriation may or may not amount to a nuisance; it becomes a nuisance when the right of the public to immediate use is affected. 10 McQuillin, Municipal Corporations, 3rd ed. 1966, § 30.73. The pipeline here does not constitute a nuisance, and the nuisance cases have no application.

Petitioner recognizes that a private individual would not be entitled to maintain a pipeline in a city street over the objection of the municipality. It says that the situation is different in the case of a rural road, however, because the easement there is limited to the right of passage and other uses incidental to that right. From this premise petitioner argues that maintenance of the pipeline in the road is not an invasion or appropriation to private use of any right or easement belonging to the public.

Most of the cases dealing with the nature and extent of the public easement in streets and roads have been suits by abutting landowners seeking to prevent, or obtain additional compensation for, some particular use of the property. Neither petitioner nor the County owns the land where the pipeline is laid, and petitioner does not claim to have an easement from the fee owner. We are not directly concerned, therefore, with the rights of an abutting owner.

In Vestry of St. Mary, Pattersea v. County of London and Brush Provincial Electric Lighting Company, Ltd., [1899] 1 Ch. 474, it was held that the parish vestry could not compel the removal of cables laid without authority below the surface of a street by the defendant electric company. The court reasoned that the cables did not interfere with the power of control over the street granted to the vestry by Parliament. The case seems to have turned upon the extent to which control was vested in the local authority rather than upon the extent of the public easement.

The easement in a city street is generally held to be quite comprehensive. It is not confined to the surface but extends to a depth that will enable the urban authority to do that which is done in every street, including the laying of sewer, gas and water pipes. See City of San Antonio v. United Gas Pipe Line Co., Tex.Civ. App., 388 S.W.2d 231 (wr. ref. n. r. e.); West Texas Utilities Co. v. City of Baird, Tex.Civ.App., 286 S.W.2d 185 (wr. ref. n.

r. e.); Cloverdale Homes v. Town of Cloverdale, 182 Ala. 419, 62 So. 712, 47 L.R.A., N.S., 607; Lostutter v. City of Aurora, 126 Ind. 436, 26 N.E. 184, 12 L.R.A. 259; Levi v. Schwartz, 201 Md. 575, 95 A.2d 322, 36 A.L.R.2d 1241; Haven Homes v. Raritan Township, 19 N.J. 239, 116 A.2d 25; Mayor and City Council of Baltimore v. United States, 4th Cir., 147 F.2d 786; 1 Elliott, Roads and Streets, 4th ed. 1926, §§ 20, 255.

Some courts have taken the position that an easement for a rural road is much less comprehensive and amounts to little more than a right of passage. See West v. Maryland Gas Transmission Corp., 162 Md. 298, 159 A. 758, and authorities there cited; Sterling's Appeal, 111 Pa. 35, 2 A. 105; Bloomfield and Rochester Natural Gaslight Co. v. Calkins, 62 N.Y. 386; 1 Elliott, Roads and Streets, 4th ed. 1926, § 482 et seq. These courts usually hold that the rights of the abutting owner diminish as the public needs increase, but they seem to proceed on the theory that the fee owner retains, subject to lawful regulation, all that is not presently needed for public use. See Colegrove Water Co. v. City of Hollywood, 151 Cal. 425, 90 P. 1053, 13 L.R.A.,N.S., 904.

The courts of other jurisdictions apparently do not recognize any difference between an urban and a suburban servitude. See Franklin v. Board of Lights and Water Works, 212 Ga. 757, 95 S.E.2d 685; In re Opinion of the Justices, 297 Mass. 559, 8 N.E.2d 179; Cheney v. Barker, 198 Mass. 356, 84 N.E. 492, 16 L.R.A.,N.S., 436; Cater v. Northwestern Tel. Exch. Co., 60 Minn. 539, 63 N.W. 111, 28 L.R.A. 310; Hardman v. Cabot, 60 W.Va. 664, 55 S.E. 756, 7 L.R.A.,N.S., 506. Nichols states that the "seemingly fanciful distinction" between urban and rural servitudes does not rest on a legal difference between the public easement of a highway in the city and in the country, but on a different ground. He points out that:

"No community, however rural, enterprising enough to desire to supply itself with the conveniences common in cities or towns, has been denied the use of its own highways to lay pipes or wires of a kind maintained without compensation in thickly settled municipalities. However, the use of the highways running through such a region has been denied to the promoters of an undertaking, of no benefit to the community through which it passes or to the abutters upon the highways therein, who seek to secure the transportation of passengers or the transmission of matter from one distant point to another without paying for the right of way." 3 Nichols on Eminent Domain, 3rd ed. 1965, § 10.1 [1]. See also Van Brunt v. Town of Flatbush, 128 N.Y. 50, 27 N.E. 973.

The question has not been decided in Texas. In Clutter v. Davis, 25 Tex.Civ. App. 532, 62 S.W. 1107 (wr. ref.) it was held that the abutting owner was entitled to an injunction to prevent the digging of wells in the public road near the plaintiff's residence. The court stated that the highway easement conferred upon the public only the right of passage and such other uses as are incidental to that right. On the other hand in Continental Pipe Line Co. v. Gandy, Tex.Civ.App., 162 S.W.2d 755 (wr. ref. w. m.), it was held that the fee owner was not entitled to damages for the construction by a common carrier pipeline company, with the consent of the county, of a telephone line in the public road across his property. Although the court referred to the use of the surface of the road and the erection of poles and wires above the surface, it is likely that the poles also extended below the surface.

The reasons for refusing to recognize any distinction between rural and urban servitudes are well expressed in Cater v. Northwestern Tel. Exch. Co., 60 Minn. 539, 63 N.W. 111, 28 L.R.A. 310, where the court said:

"But it is now universally conceded that urban highways may be used for constructing sewers and laying pipes for the transmission of gas, water and the like

for public use. Some courts put this on the ground that these uses are merely incidental to and in aid of travel on the streets. Other courts put it on the ground that such uses are contemplated when the easement in urban ways is acquired, but not in the case of rural highways. But it seems to us that neither of these reasons is either correct or satisfactory. The uses referred to of urban streets are not in aid of travel, but are themselves independent and primary uses, although all within the general purpose for which highways are designed. Neither can a distinction between urban and rural ways be sustained on the ground that such uses were contemplated when the public easement was acquired in the former but not when the easement was acquired in the latter. As a matter of fact, most of these uses were unknown when the public easement was acquired in many of the streets in the older cities. Indeed, many of what are now urban highways were merely country roads when the public acquired its easement in them, and doubtless many highways that are now merely country roads will in time become urban streets. * * *

"It seems to us that a limitation of the public easement in highways to travel and the transportation of persons and property in movable vehicles is too narrow. In our judgment, public highways, whether urban or rural, are designed as avenues of communication; and, if the original conception of a highway was limited to travel and transportation of property in movable vehicles, it was because these were the only modes of communication then known; that as civilization advanced, and new and improved methods of communication and transportation were developed, these are all in aid of and within the general purpose for which highways are designed. Whether it be travel, the transportation of persons and property, or the transmission of intelligence, and whether accomplished by

old methods or by new ones, they are all included within the public 'highway easement,' and impose no additional servitude on the land, provided they are not inconsistent with the reasonably safe and practical use of the highway in other and usual and necessary modes, and provided they do not unreasonably impair the special easements of abutting owners in the street for purposes of access, light, and air."

■ It is our opinion that in so far as the rights of the public are concerned, there is no essential difference between a rural road and a city street. In either case the responsible officials may, within the limits of the power vested in them by the Legislature, authorize the use of the subsurface for sewers, pipelines and other methods of transmission and communication that serve the public interest. This was taken for granted when the Legislature provided that public utilities might lay their water, gas and electric lines under public roads and city streets after notifying or obtaining the approval of the proper agency. See Articles 1433, 1433a, 1436a and 1436b, Vernon's Ann.Tex.Civ.Stat. We recognize the right of the fee owner to use the subsurface in a manner that does not affect or impair enjoyment of the public easement, City of Fort Worth v. Citizens Hotel Co., Tex.Civ.App., 380 S.W.2d 60 (wr. ref. n. r. e.), but a stranger will not be allowed to encroach upon such easement over the objection of the public agency vested with jurisdiction and control of the street or road.

■ The road here is a public way acquired by prescription. It has been suggested that the doctrine of prescription as applied to public ways should be based upon a presumption that the road or street was laid out and established by competent authority. 1 Elliott, Roads and Streets, 4th ed. 1926, § 189. We have stated that it is based on the presumption of a lost grant. City of Austin v. Hall, 93 Tex. 591, 57 S. W. 563. Under either theory, a highway

**324**

easement acquired by prescription is no less comprehensive than one acquired by grant, dedication or condemnation.

We agree with the Court of Civil Appeals: (1) that petitioner's pipeline constitutes an invasion of the public easement in the road, and (2) that an estoppel against the County cannot be predicated upon the acts of the single commissioner not authorized by law or by the commissioners court. This disposes of the only points of error brought here on the merits of the case, and it is our opinion that petitioner's other points afford no basis for disturbing the trial court's judgment.

The judgment of the Court of Civil Appeals is affirmed.

McGEE, J., not sitting.