## UNITED STATES v. OKLAHOMA GAS & ELECTRIC CO.

### No. 482.

District Court, W. D. Oklahoma.

March 6, 1941.

Charles E. Dierker, U. S. Atty., and George H. McElroy, Asst. U. S. Atty., both of Oklahoma City, Okl., for plaintiff.

Rainey, Flynn, Green & Anderson, of Oklahoma City, Okl., for defendant.

VAUGHT, District Judge.

The facts in this case are stipulated.

Prior to July 9, 1926, the State of Oklahoma, through its Highway Commission, applied to the Secretary of the Interior of the United States, petitioning him to grant permission in accordance with section 4 of the Act of March 3, 1901, 31 Stat. 1058, 1084, 25 U.S.C.A. § 311, to open and establish a public highway across certain land, which had been allotted to She-pah-tho-quah, a Kickapoo Indian, allottee No. 193, described as follows: "The North Half of the Northeast Quarter of Section 31, Township 11 North, Range 3 East of the Indian Meridian in Pottawatomie County, Oklahoma."

The course of the highway was described as follows: "Beginning at the NW Corner of said N/2NE/4 thence South along the West line of said N/2NE/4 a distance of 40 feet thence Southeasterly on a curve to the right having a radius of 1106.3 feet a distance of 573 feet thence S. 56° 56′ E. a distance of 2004.3 feet to a point on the South line of said N/2NE/4 thence East along said South line a distance of 150 feet thence N. 56° 56′ W. a distance of 2139.3 feet a distance of 360 feet to a point on the North line of said N/2NE/4 thence West along said North line a distance of 250 feet to point of beginning containing 4.66 acres, more or less, in addition to present right of way."

The application was duly considered by the Interior Department, and on June 1, 1927, a claim was filed by the United States on behalf of the heirs of the said allottee in the sum of $1,275, as compensation to said heirs for the establishment of said highway across their allotment, and said sum of $1,275 was paid by the State of Oklahoma.

On January 20, 1928, the Assistant Secretary of the Interior endorsed the following approval on the map of definite location accompanying the application of the State of Oklahoma:

"Department of the Interior
"Jan 20 1928        1928.
"Approved subject to the provisions of the Act of March 3, 1901 (31 Stat.L., 1058–1084), Department regulations thereunder; and subject also to any prior valid existing right or adverse claim.
"/s/    John H. Edwards
"Assistant Secretary"

Subsequent thereto and on the 9th day of October, 1936, the State Highway Commission of Oklahoma, acting under and by virtue of the laws of said state, granted to the defendant, Oklahoma Gas & Electric Company, a license and permit to erect, construct and maintain a system of wires, poles and other electrical equipment over and along said highway. Said license provided:

"That the Commission does by these presents grant to Oklahoma Gas & Electric Company of Shawnee, Oklahoma, a license to erect, construct and maintain a 4000 volt electric line along, upon or across the hereinafter described state highways for the purpose of transmitting, selling and using electricity."

*     *     *     *     *     *

"This authority includes the right to cross all state highways and state roads intersecting any part of the route above described, and said authority also includes the right to maintain the necessary stubs and guy wires and to trim trees when and where necessary for proper clearance, but trees shall not be removed or trimmed without the written approval of the Commission. Said poles, posts and stubs are to be erected, or pipe lines installed, under the direction of the Commission and in the manner and locations as approved by him."

*     *     *     *     *     *

"This license is granted subject to any and all claims made by adjacent property owners as compensation for additional burden on such adjacent and abutting property."

It is admitted that the lands, through which the highway in question was constructed, were restricted Indian lands.

The plaintiff brings this action, seeking a declaratory judgment that the erection of an electric line for the transmission of

power for private, commercial purposes across the above described land, held in trust by the United States for the heirs of the deceased allottee, constituted an unwarranted use and servitude of said property, and that this court declare that said company has no easement over said land, and no right or authority to erect a power transmission line thereupon; that a mandatory injunction issue requiring said defendant to remove said poles and lines from said above described property; that the plaintiff have judgment against the defendant for the sum of $40 (or $5 a pole for eight poles erected on the above described property), for the costs of this action, and for all further proper relief in the premises.

There being no controversy over the facts, the only question for determination is whether or not the grant to the defendant by the State Highway Commission is sufficient authority for the defendant to erect its poles and transmission lines on said highway without the consent of the owner of the land through which said highway was constructed.

It is the contention of the plaintiff that in executing the grant to the State Highway Commission of Oklahoma to construct a public highway through said Indian allotment, there was at least an implied understanding that said highway would be used only for the purposes of pedestrians and vehicles, or the ordinary uses of a highway, and that the use of said right of way for the purposes of erecting a transmission line constituted an unwarranted use and servitude of said right of way.

It is the contention of the defendant that when the plaintiff, through its authorized agents, granted a right of way for purposes of constructing a state highway, it did so with full knowledge that the opening and establishment of the highway would be in accordance with the laws of the State of Oklahoma.

The Act of March 3, 1901, c. 832, § 4, 31 Stat. 1084, 25 U.S.C.A. § 311, provides: "The Secretary of the Interior is authorized to grant permission, upon compliance with such requirements as he may deem necessary, to the proper State or local authorities for the opening and establishment of public highways, in accordance with the laws of the State or Territory in which the lands are situated, through any Indian reservation or through any lands which have been allotted in severalty to any individual Indian under any laws or treaties but

which have not been conveyed to the allottee with full power of alienation."

The Act of March 4, 1911, c. 238, 36 Stat. 1253, 43 U.S.C.A. § 961, provides for the granting of a right of way to individuals or corporations for the erection of electrical poles and lines through Indian reservations. This statute, however, has no application to the present controversy because the defendant did not seek to or erect a line of poles through an Indian reservation other than upon a public highway.

When the government granted the right of way, there were no limitations as to what should constitute the uses of the highway. That was apparently left to the determination of the State of Oklahoma. And the question narrows itself even more to the proposition as to what constitutes legal use of a state highway. Will the legal use be determined by federal law or by state law?

Laws of Oklahoma 1917, c. 230, p. 429, § 1, 69 Okl.St.Ann. § 4, provides: "Any person, firm or corporation organized under the laws of this State, or qualified to do business in this State to furnish light, heat or power by electricity, gas or oil, provided the same shall not apply to interstate pipe lines, shall have the right to use the public roads and highways in this State for the purpose of erecting poles or posts along or across the same, and sustain their wires and fixtures thereon, or to lay under the surface of said roads or highways pipes or conduits for the purpose of selling electricity and gas, or either, for light, heat or power, upon obtaining the consent of the Board of County Commissioners of the county or counties in which the public highways are proposed to be used for such purpose, * * *."

This legislative act of the State of Oklahoma was amended by the Laws of 1933, c. 12, p. 31, § 6, 69 Okl.St.Ann. § 26, which provided for the establishment of the State Highway Commission and granted the said Highway Commission full control and authority over state highways.

The Supreme Court of Oklahoma, in Nazworthy v. Illinois Oil Co., 176 Okl. 37, 54 P.2d 642, held, quoting from the syllabus: "The construction and maintenance of an oil pipe line along and under a state highway, constructed and maintained in the manner authorized and provided by law, is not an additional servitude for which compensation must be paid to the owner of

abutting land, or to the owner of the land over which the highway was laid."

In this case the court gives an excellent analysis of the development of highways and of the necessity for present day uses of a state highway, which perhaps were not even in contemplation at the time the highways were originally dedicated, and quotes from the Supreme Court of Kansas in McCann v. Johnson County Telephone Co., 69 Kan. 210, 76 P. 870, 66 L.R.A. 171, 2 Ann. Cas. 156, as follows: " 'The purpose of the highway is the controlling factor. It is variously defined or held to be for passage, travel, traffic, transportation, transmission, and communication. It is a thoroughfare by which people in different places may reach and communicate with each other. The use is not to be measured by the means employed by our ancestors, nor by the conditions which existed when highways were first devised. The design of a highway is broad and elastic enough to include the newest and best facilities of travel and communication which the genius of man can invent and supply.' "

And the court furthermore quotes at length from the Supreme Court of Minnesota in Cater v. Northwestern Tel. Exchange Co., 60 Minn. 539, 63 N.W. 111, 28 L.R.A. 310, 51 Am.St.Rep. 543, as follows:

" 'If there is any one fact established in the history of society and of the law itself, it is that the mode of exercising this easement is expansive, developing and growing as civilization advances. In the most primitive state of society the conception of a highway was merely a footpath; in a slightly more advanced state it included the idea of a way for pack animals; and, next, a way for vehicles drawn by animals,—constituting, respectively, the iter, the actus, and the via of the Romans. And thus the methods of using public highways expanded with the growth of civilization, until to-day our urban highways are devoted to a variety of uses not known in former times, and never dreamed of by the owners of the soil when the public easement was acquired. Hence it has become settled law that the easement is not limited to the particular methods of use in vogue when the easement was acquired, but includes all new and improved methods, the utility and general convenience of which may afterwards be discovered and developed in aid of the general purpose for which highways are designed. And it is not material that these new and improved methods of use were not contemplated by the owner of the land when the easement was acquired, and are more onerous to him than those then in use.'

"The conclusion reached is that:

" 'The construction and maintenance of a telephone line upon a rural highway is not an additional servitude for which compensation must be paid to the owner of the land over which the highway is laid.' "

The Oklahoma court concludes its opinion with the following very pertinent statement: "When the state constructs a modern highway along or through a tract of land privately owned, the result is often in fact a substantial enhancement of the value of the privately owned tract. Notwithstanding that fact, however, the law presumes damage to the tract and the landowner is compensated for the land taken and used, irrespective of any enhancement of the value. After the highway is constructed it is used generally for travel, transportation, and transmission. As new methods of transportation develop they are used upon the highway, whether that use is by bus, truck, or oil pipe line. When the landowner has been compensated for the taking of the highway, it is too difficult to follow a contention that he is additionally damaged by each different, new, or additional use of the highway for travel, transportation, or transmission. We conclude that the use of the highway here under consideration, authorized by specific state statute, enjoyed under specific supervision of the state, is wholly within the primary law of the use of the highway and must be held to be no such additional burden or servitude as would entitle the abutting landowner to additional compensation for such use."

The Nazworthy case was followed by the Supreme Court of Oklahoma in Stanolind Pipe Line Co. v. Winford, 176 Okl. 47, 54 P.2d 646, and in Okmulgee Producers & Manufacturers Gas Co. v. Franks, 177 Okl. 456, 60 P.2d 771.

In Jafek v. Public Service Co. of Oklahoma, 183 Okl. 32, 79 P.2d 813, 815, the Supreme Court quoted from Clayborn v. Tennessee Electric Power Co., 20 Tenn. App. 574, 101 S.W.2d 492, 496, with approval, as follows: " 'The highway not only serves the needs of the traveling public, but may also lawfully serve the public by furnishing the pubic the conveniences afforded by public utility companies.' "

■ Whether or not the construction of a telephone or telegraph line upon a public highway constituted an additional servitude of said right of way is determined by local law (Barney v. Keokuk, 94 U.S. 324, 24 L.Ed. 224), and has been passed upon by many of the state courts and by three Federal District Courts. The states of Illinois, Maryland, New Jersey, North Dakota, Ohio, Pennsylvania, and Virginia have held in effect that a telephone or telegraph line is an added burden on a rural highway, entitling an abutting property owner to compensation. The states of Alabama, Kansas, Kentucky, Michigan, Minnesota, Oklahoma, Vermont, and West Virginia have held to the contrary. In the federal courts, Pacific Postal Tel. Cable Co. v. Irvine, C.C.Cal., 1892, 49 F. 113, and Kester v. Western Union Tel. Co., C.C.N.Y., 1901, 108 F. 926, it was held that the construction of a telegraph line constituted an additional burden upon the fee of a public highway right of way. In a much later case, however, the Circuit Court for the Northern District of Georgia in 1908, in Southern Bell Telephone & Telegraph Co. v. Nalley, 165 F. 263, held: "The construction of a telephone line upon a public county road or highway in the state of Georgia, with the approval of the county authorities in charge of such road or highway, which line is used in the transmission of messages between various points, is not an additional burden or servitude upon such public road, and does not exceed the uses to which the easement in the public can be put by the approval of such county authorities, and an abutting landowner has not the legal right to prevent such use." (Quoting from the headnote.)

In a long line of cases dealing with streets, the federal courts have held without exception that the power to control the use of a public street is vested solely in the municipality. In Owensboro v. Cumberland Telephone & Telegraph Co., 230 U.S. 58, 33 S.Ct. 988, 57 L.Ed. 1389, the court held that the original source of power over both streets and highways is the state, but that this power or control is generally delegated in some form to the municipalities and county authorities of the state.

Emphasis is placed by the plaintiff on the concluding paragraph of the license granted to the defendant by the State Highway Commission, which paragraph is as follows: "This license is granted subject to any and all claims made by adjacent property owners as compensation for additional burden on such adjacent and abutting property."

This, however, does not refer to additional burden upon the right of way. The defendant might erect its poles and construct its line in such a way as to interfere with the entrance from the highway to the adjacent property at the customary point, or it might place the line so near to the adjacent property as to damage growing trees or otherwise interfere with the actual use of the adjacent property. The language, however, of the license is clear and unambiguous.

The plaintiff in its briefs has cited no cases in the federal courts which limit in any manner the power of the state to determine the uses of public highways.

■ There is no serious contention that the state acquired by this grant from the Secretary of the Interior anything but an easement, but if the grant conveyed the power to the state to use this right of way for highway purposes and the state determined that the use granted to the defendant was a valid and legal use of the public highway, the fact that the state has a mere easement and not a fee would be immaterial.

When the government accepted $1,275 for the use of 4.66 acres of land, there is a strong inference, at least, that the state was paying to the government all that the land was actually worth and, therefore, the government was surrendering any right it had in the land, except in the event that the state ceased to use the land for highway purposes.

■ Notwithstanding payment of this substantial sum for the small amount of land acquired under the grant, it is the judgment of the court that the state could use the land only for highway purposes; and, in the event it failed to use the land for highway purposes, that the title would revert to the government.

■ In conclusion, therefore, the court is of the opinion that when the government granted to the State Highway Commission an easement to the right of way for the construction of a public highway, it did so under the Act of Congress of March 3, 1901, supra, "for the opening and establishment of public highways, in accordance with the laws of the State or Territory in which the lands are situated"; that the state had the power to determine

352

the uses to which said highway would be subject; and that, since by the Laws of Oklahoma, 1917, c. 230, supra, the defendant company has the right to construct its line of poles and wires along said highway with the consent of the Highway Commission, and since the Highway Commission has granted authority and permission to the defendant to erect said line, the plaintiff has no right to claim additional compensation for the use of said right of way as a highway for the purposes in question, nor to the injunctive relief sought against the defendant, requiring it to remove its line of poles and wires.

Judgment will be rendered for the defendant. Findings of fact, conclusions of law, and a form of judgment, consistent with this opinion, may be submitted within ten days from this date.