## NAZWORTHY v. ILLINOIS OIL CO.

No. 22620. Feb. 11, 1936.

Walter Mathews, for plaintiff in error.

Wilcox & Swank, for defendant in error.

C. B. McCrory, T. H. Ottesen, and Dick Jones, amici curiae.

WELCH, J. This action was commenced by plaintiff in error to recover from the defendant in error the sum of $320 for and on account of the alleged taking and appropriating, without his consent, a strip of land one mile long and of sufficient width in which to lay a six-inch oil line under the state highway, along the north side of plaintiff's land.

It appears that plaintiff's land lies south of and abutting State Highway No. 33, running east and west in Payne county, along the township line between townships 17 and 18 north.

In the year 1913 the Empire Refining Company constructed an oil pipe line along said highway 28 or 30 feet south of the center of said highway. About the year 1921, it sold and transferred said pipe line to defendant, Illinois Oil Company. In the year 1927, the State Highway Commission decided to grade, drain, and pave said highway, and declared it necessary to widen the right of way from 66 feet to 78 feet, and in carrying out said plan it contracted with plaintiff for, and plaintiff sold and conveyed to the state of Oklahoma, a perpetual easement across, over, and along a strip of land 39 feet wide along the north side of his premises, including the 33 feet originally comprising the south half of said highway, and an additional six feet. Thereafter, the State Highway Commission ordered and directed defendant oil company to move its line over to the south and along and upon said six-foot strip. This the oil company undertook to do. About the time the defendant company had completed the removal of its pipe line, the State Highway Commission determined it was necessary to further widen the right of way to about 98 feet, calling for a further or additional strip of ten feet in width on each side, or for another ten feet off of plaintiff's land. Amicable agreement therefor could not be made, and the Highway Commission instituted condemnation proceedings under its right of eminent domain, which resulted in a payment to plaintiff for this latter strip of the sum of $100, and $50 for moving his fence.

Thereupon the Highway Commission directed defendant company to remove its line over to and upon this ten-foot strip, which it did, finally placing its line a few feet north of plaintiff's fence, and upon the strip of land taken from him by the condemnation proceedings by the State Highway Commission. Not having consented to the taking, plaintiff contends he is entitled to compensation from the oil company (in the sum sued for). He alleges that the usual and customary price paid for pipe line right of way not along a highway, but across lands privately owned, is $1 per running rod, or $320 for the mile, and he seeks recovery here upon that basis.

The removal and relocation of the pipe line was done under a license granted by the State Highway Commission by L. C. Barnard, division engineer.

There appears little controversy as to the facts. The court did submit the question to the jury as to who owned the strip of land at the time the pipe line was last moved.

The court further instructed the jury that:

"If you find from the evidence that at the time this pipe line was moved over to the

place where it is at the present time, that the state had, through condemnation proceedings of the Highway Department, acquired an easement for highway purposes and at that time their easement was 100 feet wide, then under such circumstances you find your verdict for the defendant in this case."

The verdict and judgment were for defendant, and plaintiff appeals.

We do not understand the plaintiff to contend that the pipe line was removed and placed upon plaintiff's land before the condemnation money had been paid to plaintiff or into court for him.

The issues were somewhat clouded by evidence offered by plaintiff tending to prove that the pipe line as finally laid was not within the ten-foot strip of land condemned by the State Highway Commission, and this question was submitted to the jury. But under the pleadings and evidence a finding that the pipe line was not laid upon the strip condemned could hardly be sustained. The verdict, being a general one, must be construed as a finding against plaintiff on this particular question. The petition alleged that the pipe line was laid upon that particular strip, and no amendment was made or offered alleging otherwise.

The inevitable conclusion here is that the pipe line is laid upon and along the ten-foot strip condemned by the Highway Commission for highway purposes.

The sole question, then, is whether an abutting landowner is entitled to additional compensation for a new and additional servitude or burden, when an oil pipe line is laid along and under the highway on land formerly conveyed by the owner or condemned for highway purposes. If such owner is entitled to such additional compensation, then the trial court erred in his instructions and the judgment must be reversed. If such owner is not entitled to such additional compensation upon the theory of an additional servitude or burden, then the judgment of the trial court is correct and should be affirmed.

As to oil pipe lines such as are here involved, we find no case in this state holding to the one or other rule, although there doubtless are hundreds and perhaps thousands of miles of oil pipe line laid along and within public highways in this state.

And it is worthy of note that although such lines have been laid for many years, no claim of the right to such additional compensation has been presented for adjudication until about the year 1930, when this claim was first presented.

The question in similar situations has been before the courts of other jurisdictions in several cases. As a general proposition, it may be stated that where the land of an individual is once taken, under proper authority, for a public use, and full compensation is paid the owner for a perpetual easement, the owner is not entitled to additional compensation when the same land, or a part thereof, is afterwards appropriated under legislative authority and subjected to another or to further public use of a like kind.

As applied to the construction of a telephone line upon a rural highway, the Supreme Court of Kansas considered this question in McCann v. Johnson County Telephone Co., 76 P. 870. In the body of the opinion it was said:

"The purpose of the highway is the controlling factor. It is variously defined or held to be for passage, travel, traffic, transportation, transmission and communication. It is a thoroughfare by which people in different places may reach and communicate with each other. The use is not to be measured by the means employed by our ancestors, nor by the conditions which existed when highways were first devised. The design of a highway is broad and elastic enough to include the newest and best facilities of travel and communication which the genius of man can invent and supply."

It is then stated that the theory is well presented in Cater v. N. W. Tel. Exchange Co., 60 Minn. 539, 63 N. W. 111, 28 L. R. A. 310, from which is quoted with approval the following:

"If there is any one fact established in the history of society and the law itself, it is that the mode of exercising this easement is expansive, developing and growing as civilization advances. In the most primitive state of society the conception of a highway was merely a footpath; in a slightly more advanced state it included the idea of a way for pack animals; and next a way for vehicles drawn by animals—constituting, respectfully, the iter, the actus, and the via of the Romans. And thus the methods of using public highways expanded with the growth of civilization until today our urban highways are devoted to a variety of uses not known in former times, and never dreamed of by the owners of the soil when the public easement was acquired. Hence it has become settled law that the easement is not limited to the particular methods of use in vogue when the easement was acquired, but includes all new and improved methods, the utility and general convenience of which may afterwards be discovered and developed

in aid of the general purpose for which highways are designed. And it is not material that these new and improved methods of use were not contemplated by the owner of the land when the easement was acquired, and are more onerous to him than those then in use. * * *"

The conclusion reached is that:

"The construction and maintenance of a telephone line upon a rural highway is not an additional servitude for which compensation must be paid to the owner of the land over which the highway is laid."

These cases may be said to present in general the theory or reasoning upon which the cases holding generally against the contention of plaintiff herein are based. This line of authority holds that the rights of the owner of lands in rural communities over and along which highways are established must yield to the needs of the public generally with the expansion and growth of civilization as new methods and means of travel, transportation of persons, commodities, etc., and transmission of messages, intelligence, etc., are devised, developed, and expanded, notwithstanding that the use is more onerous than were the means and methods in use at the time the highway was laid out, and notwithstanding that the new uses include not only new methods of travel, transportation, and transmission by moving vehicles, etc., but the right to conduct and maintain permanent structures in and along the highway for improved methods of transportation, etc., by and for the benefit of the public in general, limited only to the extent that the improved or other methods of use do not interfere with the use of such highway for general, legitimate use of the highway by footmen. horsemen, and vehicles; and notwithstanding that such structures are erected and maintained by private corporations for private gain. This has been referred to by some as the "March of Progress" theory.

Although the question has not been passed upon by courts of this state, our statutes constitute an interesting guide in so far as they indicate the general policy that, under proper supervision, our highways may be freely used for oil pipe lines.

Section 11551, O. S. 1931, gives every corporation, joint stock company, partnership, or other person exercising the right to carry or transport oil or petroleum or any of its products by or through pipe lines for hire, or otherwise, as well as producers, refiners, and dealers in crude oil, the right of eminent domain, and the use of the highways in this state for the purpose of transporting petroleum by pipe lines, and the location, laying construction, maintaining and operation thereof.

Section 11558, O. S. 1931, grants the right to all domestic pipe line companies to build, construct, maintain, and operate pipe lines over, under, across or through all highways in this state, etc., and section 11559, O. S. 1931, gives a like right to foreign corporations under conditions therein named.

Our statutes provide that all carriers or transporters of oil by pipe line within this state shall be deemed common carriers thereof. And they shall not allow or be guilty of discrimination in the transportation, storage, or delivery of oil. (Section 11555, O. S. 1931.) Before any person so engaged shall have or exercise the right of eminent domain, or right of way, etc., there must be filed in the office of the Corporation Commission explicit acceptance of the provisions of the law, together with a plat showing in detail the proposed location of the lines and the capacity thereof, etc. (section 11557, O. S. 1931), and there is provision for penalties if such carrier or transporter of oil should violate any of the supervisory provisions of the law, or should violate any order of courts of competent jurisdiction of this state, or the Corporation Commission, made pursuant to the jurisdiction conferred by law. (Section 11561, O. S. 1931.)

In the absence of pipe lines it might be contemplated that oil produced in the state, at least in part, would be transported upon and along the highways in vehicles, and these statutory provisions above referred to would seem to fix it as a policy of our statutes that oil pipe lines, along the highways, operating as public carriers, should in their own sphere aid in caring for the transportation problems of the state and of its citizens. And those statutes would seem to declare that it is the policy of the state that such use of the highways is in furtherance of the general policy of the state to use the highways for the convenience of the citizens of the state in travel and transportation.

In keeping with this general policy of the use of highways, the state permits the use thereof by persons operating busses for the transportation of passengers for hire, and trucks for the transportation of freight for hire, and the use of the highways by persons engaged in private commercial enterprise and the like. So that at this time our highways are used by common carriers of oil in pipe lines, common carriers of passengers and freight by bus and truck, "motor car-

riers" of other classification, and by citizens in general travel and transportation, and all these together constitute the use of the highways for every individual and public convenience; no one of such uses being permitted to exclude any of the others. Two statements of a rule contrary to the above cited decisions should be noted. They are the dissenting opinion in the Kansas case of McCann v. Johnson County Telephone Co., supra, and the decision of the court in Eels v. Amer. Tel. & Teleg. Co., 143 N. Y. 133, 38 N. E. 202, 25 L. R. A. 640. These opinions are bottomed on the principle that the primary law of the use of the highway is motion, and by whatever method travel, transportation of commodities and transmission of messages is adopted, whether the most ancient or newest, most modern and efficient, motion or movement by some moving body is contemplated and must be present, and these bodies can occupy any given portion only momentarily, but that no part of the highway may be permanently appropriated and occupied exclusively by any person or corporation.

That rule as applied to the case at bar would permit the more burdensome use of the highway for a continuous line of vehicles carrying oil over the highway, but would prohibit the carrying of the same oil by pipe line under the surface of the highway, almost unnoticeable to the average user of the highway, and less burdensome in operation.

The foregoing authorities might be said to fairly present the reasoning upon both sides of the question as to the use of highways. Various cases have been decided. some following one line of reasoning and others following the other thought. It may be said that opinion is fairly well divided, with the greater number perhaps following the decisions in Kansas and Minnesota, that is, McCann v. Johnson County Telephone Co. and Cater v. Northwestern Telephone Exchange Co., supra. We note that it is suggested the weight of authority is the other way, but mere number of cases on one side or the other is not necessarily controlling. We look to the reasons given in deciding the question. The reasoning in the McCann and Cater Cases, supra, is to us unanswerable. and we follow perhaps the weight of authority, and certainly the better reasoning when we follow the rule of these cases. That is, in substance, that the new or different use of the highway, or new or different method of transmission or transportation, is but a further proper use of the highway in line with the general purpose of highways. That general purpose of highways being that, subject to proper supervision, they may be used by the public and by common carriers for such form of travel, transportation, and transmission as may be in keeping with the declared policy of the state; a chief restriction being that each such use of the highway shall not improperly interfere with the rights of others in the use of the same highways. The proper use of the highways by oil pipe lines, located, laid, and maintained under proper supervision does not interfere with the various other uses of the highways.

When the state constructs a modern highway along or through a tract of land privately owned, the result is often in fact a substantial enhancement of the value of the privately owned tract. Notwithstanding that fact, however, the law presumes damage to the tract and the landowner is compensated for the land taken and used. irrespective of any enhancement of the value. After the highway is constructed it is used generally for travel, transportation, and transmission. As new methods of transportation develop they are used upon the highway, whether that use is by bus, truck, or oil pipe line. When the landowner has been compensated for the taking of the highway, it is too difficult to follow a contention that he is additionally damaged by each different, new, or additional use of the highway for travel, transportation, or transmission. We conclude that the use of the highway here under consideration, authorized by specific state statute, enjoyed under specific supervision of the state, is wholly within the primary law of the use of the highway and must be held to be no such additional burden or servitude as would entitle the abutting landowner to additional compensation for such use.

For the reasons stated, the judgment of the trial court is affirmed.

McNEILL. C. J., OSBORN, V. C. J., and BAYLESS, CORN, and GIBSON, JJ., concur. RILEY, J., dissents. BUSBY and PHELPS, JJ., absent.