2003 OK 38

James A. BOGART, individually and on behalf of all others similarly situated, Plaintiff/Appellant,

v.

CAPROCK COMMUNICATIONS CORP.; Defendant and Third Party, Plaintiff/Appellee,

and

Southbend Corporation; United Fire & Casualty Company; and, John Doe(s) I through X, Defendants/Appellees,

v.

Power Engineers, Inc., Third Party, Defendant.

No. 97,349.

Supreme Court of Oklahoma.

April 8, 2003.

Appeal from the District Court of Sequoyah County; Honorable John C. Garrett, Trial Judge.

Harry Scoufos, Thomas W. Condit, Sallisaw, OK, for Plaintiff/Appellant.

Don G. Holladay, Timothy D. DeGiusti, Oklahoma City, OK, for Defendant/Appellee, CapRock Communications Corp.

James K. Secrest, II, Edward J. Main, Tulsa, OK, for Defendants/Appellants, Southbend Corp. & United Fire & Casualty Co.

**KAUGER, J.**

¶ 1 The only issue presented [1] is whether a landowner is entitled to additional compensation when fiber optic cables are installed within the confines of a public right of way or easement on which public highways or roads are established. We hold that under the facts presented, no additional compensation is warranted.

### FACTS

¶ 2 This cause concerns a class action lawsuit [2] brought by the appellant, James A. Bogart (Bogart/landowner), the owner of real property in Sequoyah County, Oklahoma, against the appellee, CapRock (CapRock/telecommunications company), a Texas telecommunications [3] corporation. Bogart's property is located on the southeast side of a Sequoyah County road known as the McCoy Ford Road (the road). The landowner seeks compensation from CapRock for installing fiber optic cables in the public road easement without obtaining the landowner's permission and/or providing compensation.

¶ 3 Bogart purchased the property, "less and except public road rights of way" and subject to "any easements of record," in January of 1992.[4] The property is burdened by

---

1. The appellant asserts three issues in his petition in error. However, we succinctly treat them as one.

2. The landowner brought this suit on behalf of all other similarly situated property owners. For the requirements of a class action lawsuit see, 12 O.S.2001 § 2023. We note that the record indicates that the trial court has yet to make an initial determination as to whether this cause could be maintained as a class action as required by statute.

3. Title 17 O.S. Supp.2002 § 139.102 provides in pertinent part:
   "... 26. 'Telecommunications' means the transmission, between or among points specified by the user, of voice or data information of the user's choosing, without change in the form or content of the information as sent and received;
   27. 'Telecommunications carrier' means a person that provides telecommunications service in this state;
   28. 'Telecommunications service' means the offering of telecommunications for a fee ..."

4. The warranty deed has two dates on it, 1991 and 1992. Deposition testimony suggests that 1992 is the correct date. The deed provides in pertinent part:
   "... A part of the NE1/4 NW 1/4 of Section 24, Township 12 North, Range 23 East, Sequoyah County, Oklahoma as follows: Commencing at the NE corner of said NE1/4 NW1/4; thence West 323.95 feet to the point of beginning; thence South 7 degrees 12 minutes 43 seconds West 354.47 feet; thence South 11 degrees 45 minutes 18 seconds West 40.64 feet; thence South 112.79 feet; thence West 504.95 feet to the Easterly right of way of the Kansas City Southern Railroad; thence along said right of way North 21 degrees 07 minutes 00 seconds West 540.55 feet; thence East 752.47 feet to the point of beginning containing 7.22 acres more or less, less and except public road rights of way and being subject to any easements of record.
   ROAD EASEMENT: A part of the E1/2 NW1/4 Section 24, Township 12 North, Range 23 East, Sequoyah County, Oklahoma being more particularly described as follows: Commencing at the Southeast corner of the N1/2 SE1/4

two perpetual easements for the construction of an "Improved Highway." The easements were conveyed to Sequoyah County by Bogart's predecessors in title and filed in 1932 and 1937.[5] Both easements provide in pertinent part:

"... [the owner/owners] so long as this easement is in full force and effect defend the same unto Sequoyah County, Oklahoma, against all and every person whomever claiming the same.

This easement is granted for the sole purpose of enabling Sequyoh County, Oklahoma, its officers, agents, contractors, and employees to go upon, construct, build and at all times maintain a public road through, along and over the property herein de-

> NW1/4 of said Section 24; thence North 1507.00 feet; thence West 851.66 feet to the point of beginning; thence continuing West 17.68 feet to the Easterly right of way of the Kansas City Southern Railroad; thence along said right of way North 21 degrees 07 minutes 00 seconds West 381.69 feet; thence North 47 degrees 06 minutes 00 seconds East 207.51 feet to the Southerly right of way line of a county road; thence along said right of way East 24.24 feet; thence South 47 degree 06 minutes 00 second together with all the improvements thereon and the appurtenances thereunto belonging, and warrant the title to the same. West 214.10 feet; thence South 21 degrees 07 minutes East 376.88 feet to the P.O.B...."

5. The property description of the 1932 easement provides in pertinent part:

"... The North ten feet (10) of the Northeast quarter, (1/4) of the northeast quarter (1/4) of the northwest quarter (1/4) of section 24, TWP. 12 N. Range...."

The property description of the 1937 easement provides in pertinent part:

"... N 10 ft of the NW 1/4 of the NE 1/4 of the NW 1/4 of Section 24–12–23...."

6. Title 17 O.S. Supp.2002 § 139.102 provides in pertinent part:

"... 11. 'Interexchange telecommunications carrier' or 'IXC' means any person, firm, partnership, corporation or other entity, except an incumbent local exchange telecommunications service provider, engaged in furnishing regulated interexchange telecommunications services under the jurisdiction of the Commission;

12. 'Internet' means the international research-oriented network comprised of business, government, academic and other networks;

13. 'Local exchange telecommunications service' means a regulated switched or dedicated telecommunications service which originates

scribed and enable Sequoyah County, its officers agents, contractors and employees to always keep said road open for the use of the public...."

¶ 4 CapRock is a leading provider of telecommunications services in the south and southwestern United States. Its business involves installing underground fiber optic lines for long distance telephone service and providing local telephone exchange, long distance services, internet and data services.[6] CapRock applied for and obtained Certificates of Public Convenience and Necessity from the Oklahoma Corporation Commission in 1997, and 1999, in order to qualify as a telephone services provider in Oklahoma.[7]

> and terminates within an exchange or an exchange service territory. Local exchange telecommunications service may be terminated by a telecommunications service provider other than the telecommunications service provider on whose network the call originated. The local exchange service territory defined in the originating provider's tariff shall determine whether the call is local exchange service;
>
> 14. 'Local exchange telecommunications service provider' means a company holding a certificate of convenience and necessity from the Commission to provide local exchange telecommunications service...."

7. Title 17 O.S.2001 § 131 provides in pertinent part:

"A. No person, firm association, corporation or cooperative shall provide telecommunications services, as defined by the rules of the Corporation Commission, to any end-user in this state without having first obtained from the Corporation Commission a Certificate of Convenience and Necessity...."

See, 17 O.S.2001 § 131 et seq. After applications were filed in the Oklahoma Corporation Commission, hearings were held and final orders were issued without objection. In April of 1997, the Corporation Commission of Oklahoma approved CapRock for a certificate of public convenience and necessity to provide intrastate toll service within the State of Oklahoma. In November of 1997, the Corporation Commission approved CapRock for a certificate of public convenience and necessity to furnish local exchange telecommunications services in Oklahoma. CapRock was approved in September of 1999, to provide competitive local exchange and interexchange telecommunications services in Oklahoma. Accordingly, Bogart's argument that CapRock is not a telephone and telegraph corporation because its Articles of Incorporation describe its purpose "to buy, sell, lease and deal in services, personal property and real property of every nature and description" is without merit.

¶ 5 The telecommunications company began installing fiber optic cables in various counties in Oklahoma, as part of its development of a 7,500 mile underground fiber optic cable network which would connect points in Oklahoma, Texas, Arkansas, New Mexico, Louisiana, and Arizona. Installation occurred along public highways and county roads and, when necessary, on private property. According to CapRock, when installation was required on private property, it obtained easements from the private property owners.[8]

¶ 6 On January 18, 2000, CapRock, through its subcontractor, obtained approval from the Sequoyah County Commissioners to install fiber optic cables in Sequoyah County.[9] CapRock secured utility permits on February 17, 2000, issued by the State through the Oklahoma Department of Transportation, to install cables along public highways in Sequoyah County, Oklahoma. On April 15, 2000, Bogart, while inspecting his property, discovered some cables coming out from underneath the road and sticking up out of the ground. The landowner learned from a neighbor that the crew installing the cables was still in the vicinity.

¶ 7 Bogart approached the crew and discovered that CapRock, through a subcontractor, had installed the fiber optic cables. On August 17, 2000, Bogart filed a class action lawsuit against the telecommunications company in the district court of Sequoyah County, Oklahoma.[10] He sought a declaratory judgment and damages for trespass and unjust enrichment. The landowner alleged that without providing compensation and obtaining any title, interest, right of way, easement or permission, the telecommunications company illegally installed fiber optic cable on his real property and the property of other similarly situated landowners. The landowner sought damages only for cables which were installed within the confines of public rights of ways and easements. It is undisputed that this cause relates solely to CapRock's use of the public easement, rather than any claims for personal trespass beyond the confines of the easement or personal property damage.

¶ 8 The cause was removed to the United States District Court for the Eastern District of Oklahoma. On May 11, 2001, CapRock filed a motion for summary judgment in the federal court. It argued that, under Oklahoma law, a right of way or easement which was properly granted for the establishment of a public road, permits the use and occupancy of telephone, telegraph, electric and pipelines within the confines of the right of way or easement. On August 15, 2001, the federal court remanded the case to the district court of Sequoyah County, Oklahoma.

¶ 9 On August 23, 2001, the telecommunications company re-filed the summary judg-

---

**8.** The telecommunications company did not seek an easement from the landowner because it installed the cable within the public road easement. If the company had installed cable across private property that did not contain a public road easement or right of way, it would have sought an easement from the property owner.

**9.** The minutes of the January 18, 2000, Sequoyah County Commissioners' meeting provide in pertinent part:

"... Mr. Gordon Furbush with Power Engineering was advised by board they give permission, without signing any type of agreement as instructions by Assistant District Attorney, Jerry Moore, to install Fiber Optic lines, with motion by Mr. Tabor, Seconded to Mr. McEver, Vote Tabor, aye, McEver, aye, Harrell, aye...."

Bogart also insists that CapRock did not have the approval of the Sequoyah County Commissioners to install the cable along public roads. He includes an affidavit from the chairman of the Board of County Commissions which states that the Board gave its permission only after being assured that the property owners across whose property the line would run would be compensated. The landowner's argument is unconvincing because the affidavit does not dispute the fact that the minutes reflect that permission was given and it is consistent with CapRock's statements regarding that, when necessary, it seeks an easement from a property owner when its line crosses private property.

**10.** Bogart also named Southbend Corporation, a Mississippi Corporation, and United Fire & Casualty Company, an Iowa corporation as defendants. He alleged that Southbend and United Fire were joint sureties on a performance and payment bond. On September 11, 2000, CapRock filed a cross-claim against Southbend for indemnity. Although the paperwork is not included in the record on appeal, it appears from the trial court's order that CapRock, at some point, also asserted a claim against its subcontractor, Power Engineers.

ment motion in state court. The landowner filed a motion for partial summary judgment on September 13, 2001. The trial court granted summary judgment to CapRock on January 14, 2002.[11] The landowner appealed, and on February 27, 2002, CapRock filed a motion to retain the cause in this Court. We granted the motion to retain on March 22, 2002, and the cause was assigned on February 13, 2003.

¶ 10 **UNDER THE FACTS PRESENTED, THE INSTALLATION OF FIBER OPTIC CABLES WITHIN THE CONFINES OF A PUBLIC RIGHT OF WAY OR EASEMENT ON WHICH PUBLIC HIGHWAYS OR ROADS ARE ESTABLISHED DOES NOT IMPOSE ANY INCREASED SERVITUDE ON THE LAND WHICH WOULD ENTITLE THE LANDOWNER TO ADDITIONAL COMPENSATION.**

■ ¶ 11 The landowner does not dispute the State's power to take private property for a public purpose. Rather, he argues that: 1) the easement granted to Sequoyah County was for the sole purpose of contracting, building and maintaining a public road; 2) the installation of fiber optic cables within the easement burdens the property with an additional servitude which was not granted by the easement; and 3) the installation of the fiber optic cable in the public roadway easement, even if authorized by the State, constitutes a taking without just compensation and violates the Okla. Const. art. 2, § 24.[12] In support of his argument, Bogart cites *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982).

¶ 12 The telecommunications company agrees that real property owners must be compensated for private property taken for public use.[13] However, it asserts that: 1) pursuant to the Okla. Const. art. 9, § 2,[14] it has a right as a public utility to construct and operate lines "between any points in this State;" 2) once the Oklahoma Corporation Commission authorizes it to furnish telecommunications services within the State, it has a legal right under 18 O.S.2001 § 601[15] and 69 O.S.2001 § 1401[16] to install cable lines

11. The summary judgment also resolved claims against Southbend Corporation.

12. The Okla. Const. art 2, § 24 provides in pertinent part:

"Private property shall not be taken or damaged for public use without just compensation. Just compensation shall mean the value of the property taken, and in addition, any injury to any part of the property taken. Any special and direct benefits to the part of the property not taken may be offset only against any injury to the property not taken.... The fee of land taken by common carriers for right of way, without the consent of the owner, shall remain in such owner subject only to the use for which it is taken. In all cases of condemnation of private property for public or private use, the determination of the character of the use shall be a judicial question."

13. *Id.*

14. The Okla. Const. art. 9, § 2 provides:

"Every railroad, oil pipe, car, express, telephone or telegraph corporation or association organized or authorized to do a transportation or transmission business under the laws of this State for such purpose, shall, each respectively, have the right to construct and operate its line between any points in this State, and as such to connect at the State line with the lines; and every such company shall have the right

with its road or line, to intersect, connect with, or cross any railroad or such line."

15. Title 18 O.S.2001 § 601 provides in pertinent part:

"(a) There is hereby granted to the owners of any telegraph or telephone lines operated in this state the right-of-way of over lands and real property in this state, and the right to use public grounds, streets, alleys and highways in this state, subject to control of the proper municipal authorities as to what grounds, streets, alleys or highways said lines shall run over or across, and place the poles to support the wires are located; also the right to condemn and cross over or under, or build their lines along any railroad property or right-of-way, subject to the necessary use of such property or right-of-way by the railroad; the right-of-way over real property granted in this section may be acquired in the same manner and by like proceedings as provided for railroad corporations...."

Because this statute has remained unaltered since 1961, references are to its current version.

16. Title 69 O.S.2001 § 1401 provides in pertinent part:

"(a) Any public utilities or cable television system, not otherwise authorized to do so, lawfully operating or doing business in the State of Oklahoma shall have the right to use the public roads and highways of this state including the

within public highways or road rights of way or easements; and 3) because the scope of such right of way or easement includes the occupancy of its lines, it is not required to seek the property owner's permission or provide compensation beyond the compensation provided when the right of way or easement was first acquired. It contends that *Nazworthy v. Illinois Oil Co.,* 1936 OK 150, 54 P.2d 642 and subsequent Oklahoma decisions are controlling.[17]

¶ 13 We note at the outset that by virtue of the Supremacy Clause, we are bound by the decisions of the United States Supreme Court with respect to the federal constitution and federal law, and we must pronounce rules of law that conform to extant Supreme Court jurisprudence.[18] We also recognize that nothing in the concept of supremacy or in any other principle of law requires subordination of state courts to the inferior federal courts.[19] Subject to decisions of the United States Supreme Court, state courts are free to promulgate judicial decisions grounded in their own interpretation of federal law.[20] However, in the present cause, the landowner only asserts state constitutional claims and only relies on federal law as persuasive authority.[21]

¶ 14 The landowner's reliance on *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), is misplaced. *Loretto* involved a lawsuit brought by a New York City landlord against a cable television company seeking compensation after the cable company installed about 30 feet of cable on the landlord's building pursuant to a state statute. The United States Supreme Court determined that, although the state had the authority to authorize the installation of the cable, the intrusion constituted a taking requiring compensation. After stating that its' ruling was very narrow, the Court noted that constitutional protection for the rights of private property does not depend on the size of the area permanently occupied.

¶ 15 *Loretto* dealt with a requirement that private landlords allow cable television companies to attach facilities to the landlord's property. Here, unlike the landowner in *Loretto,* there was an initial compensation for the taking when the public highway/road easement was established. At issue here is whether the installation of fiber optic cables

---

right-of-way and all easements pertaining thereto, as hereinafter provided.

(b) The use of the public roads and highways by such public utilities or cable television system shall be for the purpose of erecting poles and posts, attaching equipment, wires and fixtures thereto and lying pipes and conduits under the surface thereof. Such poles, wires, fixtures, pipes and conduits shall be erected, placed, adjusted or laid and maintained only after obtaining the consent of, and under such rules and regulations as shall be construed to grant the right to use the streets or other places of any municipality of this state without the consent of such municipality. Provided further that the boards of county commissioners may grant to any citizen the right to lay pipes and conduits under the surface of any road or highway under their jurisdiction, subject to such rules, regulations and conditions as shall be prescribed by the board of county commissioners...."

Because this statute has remained unaltered since 1985, references are to its current version.

**17.** *Anderson v. Illinois Oil Co.,* 1936 OK 142, 54 P.2d 646; *Stanolind Pipe Line Co. v. Winford,* 1936 OK 152, 54 P.2d 646; *Okmulgee Producers & Mfrs. Gas Co. v. Franks,* 1936 OK 515, 60 P.2d 771.

**18.** *Akin v. Missouri Pacific Railroad Co.,* 1998 OK 102, ¶ 30, 977 P.2d 1040; *United States v. Home Fed. S. & L. Ass'n of Tulsa,* 1966 OK 135, ¶ 18, 418 P.2d 319.

**19.** *Akin v. Missouri Pacific Railroad Co.,* see note 18, supra.

**20.** *Id.*

**21.** The landowners petition provides in pertinent part:

"... and the claims set forth in this Petition do not arise out of federal law. The Plaintiff seeks no relief under any federal laws, asserts no federal claims, and withdraws any asserted state claim that is preempted by federal law...."

The landowner's motion for summary judgment provides in pertinent part:

"... Courts in Oklahoma frequently rely on federal 'taking' cases in interpreting the state taking provision...."

Accordingly, our holding is based on Oklahoma law which provides *bona fide,* separate, adequate and independent grounds for our decision. *Michigan v. Long,* 463 U.S. 1032, 1042, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201, 1214 (1983).

falls within the purpose for which the easement was initially granted or whether it imposes an increased servitude or burden for which additional compensation is required.[22]

¶ 16 We agree with the telecommunications company that the Okla. Const. art. 9, § 2,[23] 18 O.S.2001 § 601,[24] and 69 O.S.2001 § 1401,[25] operate collectively to authorize the laying of telecommunications lines within highway or road easements in Oklahoma. The question remaining is to what extent, if any, the landowner must be compensated. We have not previously addressed this issue. However, in *Nazworthy v. Illinois Oil Co.,* 1936 OK 150, 54 P.2d 642, the Court did consider the question of whether an abutting landowner is entitled to additional compensation for a new and increased servitude or burden, when lines of an oil pipeline are laid along and under the highway on land formerly conveyed by the landowner or condemned for highway purposes.

¶ 17 In *Nazworthy,* the state highway commission instituted condemnation proceedings to widen an existing highway right of way. As a result of the eminent domain proceedings, the property owner was compensated for the addition to the right of way. Thereafter, the highway commission requested that the oil company which owned an oil pipeline buried along the public highway easement, move its pipeline onto the widened strip of land. The property owner sued the oil company, asserting that additional compensation should be paid for placing the pipeline within the confines of the widened public highway right of way.

¶ 18 The *Nazworthy* Court determined that the property owner was not entitled to additional compensation. The Court recognized that the purpose of a highway includes a passage for transmission and communication. It also noted that oil pipeline companies were, by statute: 1) given the right of eminent domain and the use of highways for

purposes of transporting petroleum products; 2) allowed the right to construct pipelines over, under and across highways in this state; and 3) were required to seek approval and supervision from the Corporation Commission.

¶ 19 The *Nazworthy* court said:

" . . . [T]he new or different use of the highway, or new or different method of transmission or transportation, is but a further proper use of the highways; that general purpose of highways being that subject to proper supervision, they may be used by the public and by common carriers for such form of travel, transportation, and transmission as may be in keeping with the declared policy of the state; a chief restriction being that each such use of the highway shall not improperly interfere with the rights of others in the use of the same highways. The proper use of the highways by oil pipelines, located, laid and maintained under proper supervision does not interfere with the various other uses of the highways.

. . . After a highway is constructed it is used generally for travel, transportation, and transmission. As new methods of transportation develop they are used upon the highway whether that use is by bus, truck, or oil pipeline. When the landowner has been compensated for the taking of the highway, it is too difficult to follow a contention that he is additionally damaged by each different, new, or additional use of the highway for travel, transportation, or transmission. We conclude that the use of the highway here under consideration, authorized by specific state statute, enjoyed under specific supervision of the state, is wholly within the primary law of the use of the highway and must be held to be no such additional burden or servitude as

---

**22.** See, *United States v. Oklahoma Gas & Electric Co.,* 318 U.S. 206, 208, 63 S.Ct. 534, 87 L.Ed. 716 (1943) [In the absence of any governing administrative ruling, statute, or dominating consideration of congressional policy, the scope of the use to which a highway can be put is determined by state law.].

**23.** The Okla. Const. art. 9, § 2, see note 14, supra.

**24.** Title 18 O.S.2001 § 601, see note 15, supra.

**25.** Title 69 O.S.2001 § 1401, see note 16, supra.

would entitle the abutting landowner to additional compensation for such use...."

Three other opinions issued after *Nazworthy v. Illinois Oil Co.*, 1936 OK 150, 54 P.2d 642 reached the same conclusion: *Anderson v. Illinois Oil Co.*, 1936 OK 142, 54 P.2d 646; *Stanolind Pipe Line Co. v. Winford*, 1936 OK 152, 54 P.2d 646; *Okmulgee Producers & Mfrs. Gas Co. v. Franks*, 1936 OK 515, 60 P.2d 771.[26] The teachings of *Nazworthy* and its progeny are decisive. It makes no difference whether the transmission is an oil pipeline or whether it is a fiber optic cable either use is included within the purpose of a public highway or road easement and, accordingly, neither use imposes an increased servitude or burden for which additional compensation is required.

## CONCLUSION

¶ 20 Summary judgment is proper only when the pleadings, affidavits, depositions, admissions or other evidentiary material establish that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.[27] Pursuant to *Nazworthy v. Illinois Oil*

Co., 1936 OK 150, 54 P.2d 642, and the decisions flowing therefrom, we determine that the installation of fiber optic cables within the confines of a public right of way or easement on which public highways or roads are established does not impose any increased servitude on the land which would entitle the landowner to additional compensation under the facts presented. Accordingly, the trial court properly entered summary judgment.

### TRIAL COURT AFFIRMED.

ALL JUSTICES CONCUR.

26. We note that some states have reached the same conclusion. See, e.g., *Broadbent Land Co. v. Town of Manila*, 842 P.2d 907 (Utah 1992) [Sewer line under shoulder of road within easement did not require additional compensation.]; *Pickett v. California Pacific Utilities*, 619 P.2d 325, 327 (Utah 1980) [Public utility's use of highway easement did not entitle owner to compensation for additional servitude.]; *Eyde Brothers Development v. Eaton County Drain Commissioner*, 427 Mich. 271, 398 N.W.2d 297, 308 (1986) [Permission or compensation unnecessary for subsurface construction of sewer system within public easement.]; *Bolinger v. City of Bozeman*, 158 Mont. 507, 493 P.2d 1062, 1068 (1972) [Public easement for county highway is not restricted to vehicular movement, but includes sewer lines.]; *Mountain States Telephone & Telegraph Co. v. Kelly*, 93 Idaho 226, 459 P.2d 349 (1969), cert. denied 397 U.S. 42, 90 S.Ct. 816, 25 L.Ed.2d 44 (1970) [Telephone facilities imposed no additional burden for which additional compensation was required.]; *Ziegler v. Ohio Water Service Co.*, 18 Ohio St.2d 101, 247 N.E.2d 728, 728 (1969) [Construction of water pipes in highway easement was not an added burden on land which required compensation.]; *Fox v. Ohio Valley Gas Corp.*, 250 Ind. 111, 235 N.E.2d 168, 172 (1968) [Public utility may lay pipeline for public use in public highway without consent of abutting landowners.]; *Hall v. Lea County Electric Coop.*, 78

N.M. 792, 438 P.2d 632, 635 (1968) [Construction of electric transmission lines within the boundaries of highway did not create additional burden or servitude.]; *Herold v. Hughes*, 141 W.Va. 182, 90 S.E.2d 451, 457 (1955) [Construction of pipeline constitutes no additional burden.]; *Johnson v. City of Chattanooga*, 183 Tenn. 123, 191 S.W.2d 175, 176 (1945) [Use of street for poles and wires was not additional burden.]; *McCann v. Johnson County Telephone Co.*, 69 Kan. 210, 76 P. 870, 872 (1904) [Construction and maintenance of a telephone line upon a rural highway is not an additional servitude for which compensation must be paid.]; *Cater v. Northwestern Tel. Exch. Co.*, 60 Minn. 539, 63 N.W. 111, 113 (1895) [Construction of telephone line imposed no additional servitude.]. Other states have reached the opposite conclusion. See e.g., *Cathey v. Arkansas Power & Light Co.*, 193 Ark. 92, 97 S.W.2d 624, 625–26 (1936); *Keokuk Junction Railway Co., v. IES Industries, Inc.*, 618 N.W.2d 352, 362 (2000); *Louisiana Power & Light Co. v. Dileo*, 79 So.2d 150, 154 (La.App.1955); *Berry v. Southern Pine Electric Power Association*, 222 Miss. 260, 76 So.2d 212, 219 (1954).

27. *Prichard v. City of Oklahoma City*, 1999 OK 5, ¶ 19, 975 P.2d 914; *Krokowski v. Henderson Nat'l Corp.*, 1996 OK 57, ¶ 8, 917 P.2d 8; *Carris v. John R. Thomas & Assoc.*, 1995 OK 33, ¶ 16, 896 P.2d 522.