2015 OK CIV APP 101

William R. BUCKLES, as Trustee of the George Sense Testamentary Trust and William R. Buckles, as Trustee of the Lois Sense Testamentary Trust, Plaintiffs/Appellants,

v.

TRIAD ENERGY, INC., Defendant/Appellee.

No. 112,530.

Court of Civil Appeals of Oklahoma, Division No. 3.

June 3, 2015.

Rehearing Denied July 1, 2015.

Cody J. McPherson, Zachary J. Foster, Mahaffey & Gore, P.C., Oklahoma City, Oklahoma, for Plaintiffs/Appellants.

William A. Johnson, Hartzog, Conger, Cason & Neville, Oklahoma City, Oklahoma, for Defendant/Appellee.

WM. C. HETHERINGTON, JR., Chief Judge.

¶1 William R. Buckles (Trustee), in his capacity as a trustee of two testamentary trusts (the Trusts), appeals an order, entered following summary proceedings, granting Triad Energy, Inc. (Triad) judgment on its motion for summary judgment and denying relief on his counter-motion for partial summary judgment on the issue of trespass to real property. Trustee did not establish a cognizable right of action against Triad as an aider and abetter of trespass. Consequently, Triad was entitled to judgment as a matter of law. The trial court's order entering judgment for Triad is AFFIRMED.

## STANDARD OF REVIEW

¶2 In determining whether summary adjudication was appropriate, we must examine the pleadings, depositions, affidavits and other evidentiary materials submitted by the parties and affirm if there is no genuine issue as to any material fact as a matter of law. *Perry v. Green*, 1970 OK 70, 468 P.2d 483. A court may look beyond the pleadings at evidentiary materials to decide whether there are any material facts disputed which remain for resolution by the trier. *Indiana National Bank v. State Department of Human Services*, 1993 OK 101, ¶10, 857 P.2d 53, 59. *Id.* "The court may not weigh the evidence, but may only review the evidence to determine whether there is a factual dispute." *Id.; Stuckey v. Young Exploration Co.*, 1978 OK 128, ¶15, 586 P.2d 726, 730. "All inferences must be taken in favor of the opposing party. *Manora v. Watts Regulator Co.*, [1989 OK 152, ¶9,] 784 P.2d 1056 (Okla. 1989)." *Seitsinger v. Dockum Pontiac Inc.*, 1995 OK 29, ¶7, 894 P.2d 1077, 1079. If reasonable people could differ as to the facts, the matter is not proper for summary judgment. *Indiana National Bank*, ¶10, p. 59. "Summary process allows for the isolation and identification of non-triable fact issues." *Winston v. Stewart & Elder, P.C.*, 2002 OK 68, ¶10, 55 P.3d 1063, 1067. "[B]efore rendering summary judgment the trial court

must rule out all theories of liability *fairly comprised* within the evidentiary materials before it" because summary process is properly invoked "only when it serves to eliminate a useless trial and should never be used to substitute a trial by affidavit for a trial by law." *Id.* (emphasis in original; footnotes omitted).

## FACTS

¶3 OG & E is not a party in this litigation. According to Trustee's Petition, the Trusts own surface estates in property located in the S/2, NE/4 of Section 28, Township 26 North, Range 13 West, Woods County, Oklahoma and the section is a single drilling and spacing unit. Trustee alleges Triad constructed or caused to be constructed "an electrical highline across the east boundary of [the Trusts'] property in the public right-of-way to supply power for [Triad's] oil and gas operations located outside[1] of Section 28–26N–13W, Woods County, Oklahoma" and did so without obtaining the Trusts' consent prior to the construction. Trustee contends use of the right-of-way is a continuing trespass and a servitude on the Trusts' property. Trustee requests relief including an injunction ordering removal of the electrical highline (the highline), damages, attorney fees, and costs.

¶4 Triad filed its Answer to the Petition and later filed a Motion for Summary Judgment; Brief in Support (Motion). In its list of undisputed facts, Triad claims Oklahoma Gas and Electric Company (OG & E) constructed the highline to supply electricity to its Snyder # 1–22 Well (the Well) located in Section 22–26N–13W in Woods County, part of the highline crosses Trusts' property, the portion crossing Trusts' property is within the right-of-way of the public road, OG & E is a public utility, and OG & E owns, operates, maintains and has exclusive control of the highline. Triad contends it does not own, operate or maintain the highline, and it did not construct it. Triad argues it is merely a customer of OG & E and OG & E, as a public

---

1. According to Triad's Motion for Summary Judgment, its well is located in "Section 22– 26N–13W, Woods County, Oklahoma."

utility, has the right to use the right-of-way.[2] Triad contends it is entitled to judgment as a matter of law in its favor on the Trusts' trespass claims and to attorney fees and costs.

¶ 5 In a response to Triad's Motion, Trustee filed an objection and brief in support and a counter-motion for summary judgment. Trustee claims "no party ever sought or obtained permission from [the Trusts] or the Woods County Board of Commissioners" prior to the construction of the highline. Trustee claims such permission is required by 69 O.S.Supp.2004 § 1401(B), which provides poles and wires "shall be erected, placed, adjusted or laid and maintained only after obtaining the consent pursuant to rules promulgated by the Department of Transportation as to the state highway system, and the boards of county commissioners of the various counties as to roads and highways under their jurisdiction" and that, consequently, the highline's construction is a trespass on the Trusts' property. Trustee admits Triad's paragraph 7 in its list of Material Facts As To Which No Genuine Dispute Exists, which states OG & E owns, operates, maintains, and has exclusive control over the highline, but disputes the representations in paragraph 8 of that list in which Triad claims it did not construct, own, operate, maintain, or have control over the highline.

¶ 6 Attached, in its entirety, to the Trusts' response is deposition testimony by Triad employee Sean Strickland (Strickland), a mechanical engineer.[3] According to Strickland, the Well was spudded in 1965, and Triad became its operator in 2002. Triad wanted three-phase electrical service from OG & E so it could use a submersible pump in the Well. His "general understanding" was that such a conversion required re-working the existing single-phase electrical supply by the addition of poles and wires. OG & E ran a formula comparing the revenue from and cost to provide three-phase electricity and required a $20,036 shortfall aid-to-construction fee payment from Triad. The fee could not be avoided because the Well is located in

OG & E territory and it is the only option for electrical service. Strickland thought another well operated by Triad in the same section, the Rahn No. 1–22H, also received service from the modification of the single-phase electrical line to three-phase electricity via the highline, as did another customer, a brine operation of Arysta Life Science Technology. Trustee also appended documents subpoenaed from OG & E indicating, *inter alia*, Strickland was the contact for an Application for Extension—Electric Lines seeking new service, an Easement Request Form for "overhang 3–phase" from another customer, and an estimate to remove "16 35'5 poles" and transformers, install "25 40'5 poles," and transformers and to replace "5000' of 6A3 conductor with 20,000' pf 4AS8 to service customer."

¶ 7 Trustee asserts "regardless of whether a public utility or a private citizen seeks to utilize the statutory framework" found in 69 O.S.Supp.2004 § 1401, "permission must be obtained from the highway authority or the applicable board of county commissioners" and "[t]hat did not occur in this case." Trustee contends the construction of the highline along the eastern boundary of the Trusts' property without prior consultation or permission obtained by Triad or OG & E constitutes a trespass for which the Trusts are entitled to summary judgment as a matter of law.

¶ 8 Triad's response to Trustee's Objection and Counter–Motion attaches portions of the same deposition testimony of Strickland and portions of deposition testimony by Trustee. In Trustee's deposition testimony, he agrees he does not recall filing a trespass claim against OG & E but he contends it is trespassing on the Trusts' property because "[t]hey contributed. They're using those power poles to provide power." Asked about his understanding of the relationship between Triad and OG & E, Trustee states "I believe that Triad purchases power from OG & E," it does so as a customer, and he does not think Triad has any other relationship

---

**2.** Triad's motion references "12 O.S. § 1401(A)" but the cited text appears in 69 O.S.Supp.2004 § 1401(A) and is unchanged from the prior statutory version, which was in effect since 1985.

**3.** At other places in the appellate record, Strickland is described as a landman for Triad.

with OG & E other than as a customer. He affirms his written response to requests for admissions in which he denies the two-year statute of limitation for trespass began no later than the completion date of the highline. He testifies his claim began when construction started on the highline and reaffirms his written denial that a statute of limitations is applicable to his money damage claim, stating "[t]here is none."

¶ 9 In its response to Trustee's Objection and Counter-Motion, Triad claims Trustees' concessions that OG & E owns, operates, maintains, and has exclusive control of the highline precludes the possibility of a permanent injunction in favor of the Trusts. Triad argues Trustee's refusal to admit by pleading denial that Triad did not construct the highline should be deemed admitted because it fails to comply to Rule 13 of the Rules for District Courts of Oklahoma, 12 O.S. Ch. 2 App. and lacks both evidentiary material justifying opposition to Triad's motion and page and line cites to evidentiary materials. Triad argues it committed no wrongful acts which would subject it to liability as a joint tortfeasor for trespass under case law cited by Trustee and, further, that any claim for conspiracy to commit trespass is time barred.

¶ 10 Triad's response also includes a September 5, 2013 affidavit by Strickland in which, *inter alia*, he states he was the person who made the request for three-phase electrical service, he learned OG & E decided it would supply the electricity by extending an existing line "across the S/2 NE/4 of Section 28–26N–13W," Triad had no input in how OG & E would supply the service, and the service delivery was delayed while OG & E designed a unique system of poles, lines, and other equipment. In his affidavit, Strickland states that in addition to Triad, two other customers, the "Bonner Home" referenced in Trustee's deposition and the Arysta Life Science Technology brine plant, use the three-phase electrical highline. Another September 5, 2013 affidavit by Mike McDonald, a Triad officer, contains little factual information, consisting mainly of recitations of claims and arguments raised in the case. He states Triad did not conduct discovery to determine if OG & E complied with § 1401 but it is his

"understanding that OG & E denies it has failed to comply." As an alternative to judgment on its motion, Triad requests additional time for discovery *via* a deposition of an OG & E representative, and that it be allowed to supplement its response. Triad claims the parties have agreed to subpoena an OG & E representative to address topics raised in the case and attaches a nineteen item "OG & E Topic List."

¶ 11 Trustee's December 17, 2013 reply to Triad's response accuses it of providing excuses, not defenses and repeats the claim Triad is liable for any non-compliance with § 1401(B). Trustee argues Triad participated in OG & E's decision because of its request for three-phase service, its aid to construction fee payment, and how it was periodically updated on the highline project's status. Trustee argues Triad was aware of the need for permissions and points to an e-mail from an OG & E representative to Strickland noting OG & E was having trouble obtaining easements.

¶ 12 The deposition of OG & E representative Russell Verba (Verba) was taken on October 13, 2013. Verba thought Triad generated power on-site, and in 2008, OG & E did not supply any electricity to the Well. Nearby existing single-phase electrical service at the south half of the northeast quarter of Section 28 was extended to the Well and converted to three-phase after the request from Triad. Aid to construction fees helps OG & E offset costs of building a particular service and were not limited to rural areas. Triad would have no right to remove the highline in response to an injunction and OG & E would not remove it if Triad abandoned the Well. OG & E does not check with landowners when the public right-of-way is used and does not expect its customers to do so. Verba testified OG & E tries to get county commissioner approval before construction in a public highway easement, counties have different requirements, Steven Loftis (Loftis) told him written permission was required if they bored under a road, Loftis obtained verbal permission from a country commissioner to put the line in, and Loftis did not identify which county commissioner had given permission.

¶ 13 Based upon Verba's use of information from Loftis, the third-party contractor who performed land services for OG & E, the Trusts then subpoenaed Loftis for a deposition taken on November 13, 2013. Loftis testified that he is a right-of-way agent who works for OG & E as an independent contractor. His employment has evolved over the years, but generally it was not his job to get permits. At the time of the highline construction, permits were not obtained in most counties prior to construction in a right-of-way unless the construction included boring under a road, interfered with pre-existing installations in the right-of-way, or it was in an area where there was an Oklahoma Department of Transportation project such as a road widening, bridge project, or in the middle of road construction. It was not his practice to secure permits because doing so involved engineering details and OG & E's technicians would have to do that work. OG & E had attempted to secure an easement for overhanging construction, could not obtain one, and consequently did its construction so it did not overhang and burden private property. Loftis knew a neighbor had refused to give an easement and assumed that was Trustee. He did not know if the highline was constructed by OG & E or by one of its contractors and had not been involved in any OG & E project in which the Woods County Board of County Commissioners required a permit or complained of construction without a permit by OG & E. He testified construction of a standard overhead line in a road right-of-way did not require a permit, and in his opinion this process had evolved out of necessity due to the burdens which would be created if every line construction had to go to a county commissioner meeting for approval. Most counties charge a fee for permits but waive it for OG & E because it is a public utility and "one of the few remaining monopolies."

¶ 14 At oral argument on the motions, Triad claimed § 1401 was not clear concerning consent, no evidence of an applicable rule had been produced, and the cases cited by Trustee were inapplicable or distinguishable because OG & E was a public utility not a private citizen, the law did not require Board of County Commissioner consent as urged by Trustee, and it had not committed a wrongful act such as would invoke aiding and abetting liability for Triad due to ratification.

¶ 15 Trustee argued OG & E had not complied with § 1401(B) and had not tried to get consent from the Board of County Commissioners. He contended the highline was "a purely private proprietary situation" and "was built to service only one oil and gas well." Trustee argued Triad was jointly liable for trespass due to OG & E's failure to secure Board of County Commissioner consent, Triad paid for "a big chunk" of the construction via the aid to construction fee payment, it was actively involved, was "the ship driving this project," and had aided, abetted, and benefitted from the trespass. Trustee claims the Trusts formerly had farmed wheat up to the edge of the road and the statute of limitations has not run because there are damages each crop year from a continuing trespass of the highline poles which cause them to be "still not able to use a couple acres of this property."

¶ 16 Triad argued any cause of action accrued more than two years before Trustee filed suit, it could not be liable on an agency theory for trespass because as a principal it could not "lay electrical lines or use the county road easement." Triad contends it paid the aid to construction fee but had no say in "where the line was going." Triad argued it incurred no trespass liability by being "the initial user of public utility services," and this distinguishes it from authorities addressing purely private right-of-way uses.

¶ 17 The trial court entered judgment in favor of Triad and denied relief on Trustee's counter-motion. This appeal followed.

## THE APPEAL

¶ 18 The case involves only what liability arises from use of a public easement.[4] Our

---

4. Trustee contends OG & E's use is a trespass. "[T]respass involves an actual physical invasion of the property of another. 58 Am.Jur. Nui-sances § 2." *Fairlawn Cemetery Association v. First Presbyterian Church, U.S.A. of Oklahoma City,* 1972 OK 66, ¶ 14, 496 P.2d 1185, 1187.

task is to determine if Trustee demonstrated it could show liability arose as to Triad such as would render erroneous the judgment in Triad's favor following summary proceedings. We conclude the trial court did not so err.

¶ 19 The Summary of the Case section in the Petition in Error states, *inter alia*, that although the highline was constructed on the Woods County section line road easement, neither Triad nor OG & E complied with the mandatory statutory requisites for usage of the county easement which are codified in § 1401, "the record demonstrates that [Triad] paid an aid to construction payment for the [highline] and was uniquely involved throughout the construction process," and "[t]he legal result of this that Triad caused (aided and abetted) a trespass on the Subject Lands." Trustee also states "even assuming Triad had complied with the requirements for usage of the county easement," the highline "constitutes an additional servitude above and beyond the public scope of the original easement" because it "serves only Triad's well and therefore serves only a private purpose." Trustee's list of Issues to be Raised on Appeal raises multiple contentions premised upon the existence of disputed issues of material fact concerning the allegations Triad aided and abetted a trespass; the electrical service lines serve a purely private purpose; the electrical lines are a continuing trespass; and Triad violated § 1401 and 69 O.S.2011 § 1202.[5]

¶ 20 In its response to the petition in error, Triad claims it was undisputed it did not physically invade or enter Trusts' lands, did not participate in OG & E's decision to construct on the lands or have reason to believe OG & E would do so unlawfully, it has not incurred liability as an aider and abetter by engaging OG & E to provide electrical services, it may not be vicariously liable as a principal for any OG & E acts because only OG & E has a right to use the public road easement, and the trespass claim is time barred. Triad contends Trustee's reliance on *Vertex Holdings, LLC v. Cranke,* 2009 OK CIV APP 10, 217 P.3d 120, (*certiorari denied* January 20, 2009), is contrary to *Nazworthy v. Illinois Oil Co.,* 1936 OK 150, 176 Okla. 37, 54 P.2d 642, and *Bogart v. CapRock Communications Corp.,* 2003 OK 38, ¶ 10, 69 P.3d 266. Both *Nazworthy*[6] and *CapRock*[7] address whether installations within a public right-of-way or easement cause an increased servitude entitling a landowner to additional compensation. We do not agree *Vertex* presents a conflicting holding.

¶ 21 In *Vertex,* the Court reversed an order entered following trial which awarded damages and attorney fees, and granted a perpetual easement of necessity for two underground sewage transmission lines. The Board of County Commissioners had disclaimed any interest in the case. The Court found the trial court had attempted to remedy a continuing trespass *via* the grant of the perpetual easement. The Court found essential elements for such a grant were not shown in the record. *Id.* ¶ 23, p. 126. Statu-

Only OG & E, not Triad, is alleged to have made such a physical invasion.

5. This statute provides: "An owner of land bounded by a road or street is presumed to own to the center of the way, but the contrary may be shown."

6. In *Nazworthy,* a highway was improved, an easement was widened, land was condemned for the larger easement, and the abutting landowner was paid for the taking. The Highway Commission ordered the defendant to move a pipeline into the newly acquired area, and a license for the relocation was granted by a division engineer of the State Highway Commission. *Id.* ¶ 4–¶ 5, p. 642. The Court determined there was no additional burden or servitude created entitling the abutting landowner to additional compensation for use of the highway easement.

7. In *CapRock,* a telecommunications services company obtained Certificates of Public Convenience and Necessity from the Oklahoma Corporation Commission so it could qualify as a telephone services provider. Its subcontractor made use of the public highways for fiberoptic cable installation after receiving approval from Sequoyah County Commissioners and obtaining utility permits from the Oklahoma Department of Transportation. The Court agreed with the telecommunications company that "Okla. Const. art. 9, § 2, 18 O.S. 2001 § 601, and 69 O.S. 2001 § 1401, operate collectively to authorize the laying of telecommunications lines within highway or road easements in Oklahoma," 2003 OK 38, ¶ 16, 69 P.3d at 271 (footnotes omitted), and found, citing *Nazworthy* and its progeny, the use did not impose any increased servitude requiring additional compensation to the landowner. *Id.,* ¶ 20, p. 273.

tory procedures for *private* condemnation of a *private way of necessity* were not complied with and elements for an easement of necessity—common ownership of dominant and servient estates with a lack of access without an easement over the servient estate after division of the property—were not proven. *Id.* ¶ 16, p. 124. The Court noted "while § 1401(B) authorizes counties to grant a *private* citizen the right to use a public road easement, a *private* use of such easement is nevertheless an additional servitude requiring consent of and compensation to parties owning the fee interest below the roadway." *Id.* ¶ 20, p. 125 (emphasis added).

¶ 22 In *Vertex*, the Court also noted analysis in 1982 OK AG 1, in which the Oklahoma Attorney General opined a board of county commissioners could permit a private citizen to install a saltwater disposal pipeline (identified as a wholly private use not serving the public interest) within a road easement, but that this usage was an additional servitude on the easement. As a consequence of how a landowner owns a fee interest in the land up to the middle of the adjoining road, this "additional servitude beyond the public use easement" required compensation to the adjoining landowner. *Id.*

¶ 23 The 1982 Opinion of the Attorney General concludes § 1401 gives a board of county commissioners plenary authority to permit a private citizen to place a saltwater disposal line in the public right-of-way but also states consent of the adjoining landowner is not required. 1982 OK AG 1, ¶ 6. Further, "[t]he primary purpose for which public roads and highways are established is for convenience of public travel, but secondary and subordinate uses are recognized, such as the use of public highways for water mains, telephone and *electric lines and other public utilities.*" 1982 OK AG 1, ¶ 7 (emphasis added).

¶ 24 Key to analysis in both *Vertex* and the 1982 Opinion of the Attorney General is that the use of the easement was a private rather than a public use. Trustee argues Triad has liability due to an alleged violation of § 1401(B) and by OG & E's creation of a private use. Our analysis requires interpretation and application of § 1401 to the facts of this case.

¶ 25 Statutory construction presents a question of law. *Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *Oklahoma Employment Security Commission v. Oklahoma Merit Protection Commission*, 1995 OK CIV APP 76, 900 P.2d 470. "Questions of law are reviewed by a *de novo* standard under which we have plenary, non-deferential and independent authority to determine whether the trial court erred in its legal rulings. *American Airlines v. Hervey*, 2001 OK 74, 33 P.3d 47." *Patterson v. Sue Estell Trucking Co. Inc.*, 2004 OK 66, ¶ 5, 95 P.3d 1087, 1088. When the meaning of a statutory provision is unclear or its application is uncertain, statutory language is to be given a reasonable and sensible construction. *Sullins v. American Medical Response of Oklahoma, Inc.*, 2001 OK 20, ¶ 17, 23 P.3d 259, 263.

¶ 26 Section 1401(B) requires public utility companies such as OG & E to place poles and wires after "obtaining the consent *pursuant to rules* promulgated by ... the boards of county commissioners of the various counties as to roads and highways under their jurisdiction." Trustee's contention Triad is liable for aiding and abetting OG & E if OG & E wrongfully failed to comply with § 1401(B), is premised upon an overly broad reading of *Robinson v. Spittler*, 1942 OK 303, 191 Okla. 278, 129 P.2d 181.

¶ 27 In *Robinson*, an administrator, who knew the plaintiff owned land by reason of an unrecorded deed from a decedent, gave a void administrator's deed selling growing timber on the plaintiff's land. The two buyers removed some timber and then one sold his interests to the other, who entered and cut more timber. The plaintiff alleged the defendants were conjoint trespassers or wrongdoers. The Court found the administrator liable for the trespass by the third-party buyers who entered and cut the timber, holding:

... one who conveys standing timber without the consent of the owner is liable for the trespass committed by his vendee in cutting and removing it, and if such conveyance is made with full knowledge on

the part of the grantor that he was not the owner of the timber, and was without authority to convey, said grantor is liable to the owner in the amount equal to three times the actual detriment suffered [23 O.S.1941 § 72], *supra.*

1942 OK 303, ¶ 21, 129 P.2d at 184.

¶ 28 *Robinson* provides no support for the proposition a customer of a public utility is liable as an aider and abettor simply by requesting the provision of electrical service by a public utility. Trustee makes assertions but has not presented any evidence of any board of county commissioner rule, or that such a rule was violated, *i.e.,* a wrong which might serve as a basis for liability by OG & E. Although "materials attached to a response to a motion for summary judgment are not to be held to the standard of competent, admissible evidence," *Davis v. Leitner,* 1989 OK 146, ¶ 13, 782 P.2d 924, 926, nevertheless, "the mere contention that facts exist or might exist is not sufficient to withstand summary judgment. The party responding to a motion for summary judgment has an obligation to present something which shows that when the date of trial arrives, he will have some proof to support his allegations." *Id.,* ¶ 12, p. 926. OG & E, the public utility at issue, is not a party to this litigation and we offer no opinion whatsoever on whether or not § 1401 was violated by OG & E. Further, Trustee's contention there is private use for a single well of the public's right-of-way flies in the face of the undisputed evidence the highline not only allows but actually *does* provide service to more than one customer. As a result, the record shows the case is factually distinguished from the authorities cited, such as *Nazworthy, CapRock, Vertex,* and the 1982 Opinion of the Attorney General.

¶ 29 Having determined Trustee has not stated a legally cognizable claim for aiding and abetting trespass as to Triad, we conclude the trial court did not err in finding Triad was entitled to judgment as a matter of law. Consequently, we need not address other allegations of error, including those concerning what statutory limitations are applicable to aiding and abetting trespass. The trial court's order entering judgment for Triad is **AFFIRMED.**

MITCHELL, P.J., and JOPLIN, J., concur.